**Kevin C. MUDD et al., Plaintiffs,**

**v.**

**Hermann F. BUSSE, Defendant.**

**Civ. No. F 75–12.**

United States District Court,
N. D. Indiana,
Fort Wayne Division.

Sept. 8, 1977.

MEMORANDUM OF DECISION
AND ORDER

ESCHBACH, Chief Judge.

This cause is now before the court for a reconsideration of defendant Hermann F. Busse's motion to dismiss this action on the ground that a dismissal is warranted under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. In a previous order entered on August 12, 1975, the court denied the defendant's motion.[1] Having taken judicial notice of recent decisions in this area of the law, the court directed the parties to submit briefs on the question of whether the doctrine as enunciated by recent cases warrants dismissal of this cause at this time. Both parties have submitted briefs. The defendant, represented by the Attorney General of the State of Indiana,[2] again urges dismissal. For the reasons set forth below, defendant's motion to dismiss will be granted.

## FACTUAL BACKGROUND

This action is brought by named plaintiffs Kevin Mudd and Jerry Whitlow who allege in the complaint filed on January 22, 1975 that they are pre-trial detainees incarcerated prior to trial pursuant to an order setting bail of the defendant Hermann F. Busse, Judge of the Circuit Court of Allen County, Indiana. Plaintiffs Mudd and Whitlow sought to maintain this action as a class action. In the order entered on August 12, 1975, 68 F.R.D. 522, the court conditionally certified a plaintiff class under Rule 23(b)(2), Fed.R.Civ.P., consisting of "all pre-trial detainees who, pursuant to order of the defendant Busse setting bail, are or will be incarcerated prior to trial because of financial inability to pledge resources sufficient to secure their release."

Ivan E. Bodensteiner, Valparaiso, Ind., Joseph J. Levin, Jr., Morris S. Dees, Jr., Montgomery, Ala., Richard C. VerWiebe, Fort Wayne, Ind., for plaintiffs.

Stephen D. Long, Fort Wayne, Ind., Arthur M. Small, Deputy Atty. Gen., Darrel K. Diamond, Asst. Atty. Gen., Indianapolis, Ind., for defendant.

---

1. *See Mudd v. Busse*, 68 F.R.D. 522, 532 (N.D. Ind.1975).

2. The Attorney General of the State of Indiana did not represent Busse when this action was initially filed nor at the time the class certifica-

tion issues were decided. *See Mudd v. Busse, supra*, 68 F.R.D. at 529. On December 29, 1976, the Attorney General entered his appearance on behalf of defendant Busse. *See* Ind. Code § 32–2.1–9–1 (Burns Supp.1976).

Plaintiffs also originally sought to maintain this action as a class action against a defendant class represented by the named defendant Busse and defined as "all judicial officers in the State of Indiana who have, who are or who will deny release to individuals charged with a criminal offense prior to conviction solely on the basis of their inability to post bond." The court has denied plaintiffs' motion to certify that class. *Mudd v. Busse, supra*, 68 F.R.D., at 526–30. Consequently, the only defendant in this action is defendant Busse.

Plaintiffs' complaint purports to state a claim under 42 U.S.C. § 1983 as well as claims directly under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. They assert that Indiana's money bail system as implemented by the defendant constitutes invidious discrimination against indigent accused persons in the plaintiff class in violation of the equal protection clause of the Fourteenth Amendment. They argue that the system as implemented establishes a classification based on wealth and constitutes a "drastic" interference with plaintiffs' fundamental right of personal liberty and their Eighth Amendment right to be free from excessive bail. While they admit that the State has a compelling interest in securing appearance at trial, they argue that the present system does not substantially relate to this objective and does not use the least restrictive means to effectuate its objective. Given the classification which plaintiffs allege the system establishes and the rights which it infringes upon, plaintiffs contend it therefore violates their right to equal protection of the laws. They also assert that the defendant's practices in setting bail violate their constitutional guarantee of due process of law. They argue that the procedures utilized by defendant Busse for setting bail are inadequate to protect the liberty interest at stake.

At the beginning of each term, defendant Busse adopts a master bond schedule in accordance with Ind.Code § 35–1–17–5(a) (Burns Supp.1976).[3] Plaintiffs allege that defendant Busse initially sets bail pursuant to that schedule and that the amount depends solely on the nature and severity of the offense charged. The defendant does not utilize any of the services of the "own recognizance" program operated by the Bail Services Project of the Allen County Superior Court. The Superior and Circuit Courts of Allen County, Indiana, have concurrent jurisdiction of all felony charges filed in Allen County. In essence, plaintiffs seek to compel defendant Busse to adopt certain of the practices and procedures of the Bail Services Project as well as certain of those suggested in ABA Standards, Pretrial Release (Approved Draft 1968) on the ground that these practices and procedures are constitutionally mandated.

In their complaint, plaintiffs seek a declaratory judgment to the effect that the bail practices of the defendant which have the effect of denying pre-trial release to indigents solely because of their inability to buy their freedom violate the Fourth, Eighth and Fourteenth Amendments. The relief they seek, while broadly phrased in the complaint, is inextricably bound up with the specific constitutional objections they make to defendant Busse's practices and procedures. This is manifest in the Pretrial Order filed on April 4, 1977 and plaintiffs' motion for summary judgment filed on May 16, 1977. The relief sought therein includes a declaratory judgment declaring the defendant's bail practices unconstitutional insofar as they (1) establish a classification based on ability to purchase pre-trial release; (2) fail to individually determine the least restrictive means of reasonably assuring appearance in court; and (3) fail to

---

**3.** This statute reads as follows:

The court, on the first day of each term, must order the amount, in which persons charged by an indictment or information are to be held to bail, and the clerk [must] enter such order on the order-book, and he must indorse the amount on each warrant when issued. If no order fixing the amount of bail has been made, the sheriff may present the warrant to the judge of the appropriate court of criminal jurisdiction, and such judge must thereupon indorse the amount of bail to be required.

provide procedural safeguards mandated by due process. They also seek a permanent injunction requiring the defendant to individually consider each person charged with a crime in his court and to attempt to determine the least restrictive means of pretrial release. In making the determination of least restrictive means, they seek to compel him to consider all factors relating to the accused's likelihood to appear, including such factors as the accused's record of appearance, his financial resources, his family ties, employment, length of residence in the community, and the nature and circumstances of the offense charged. Consonant with their claim that equal protection demands that the least restrictive means of assuring presence at trial be used, they seek to compel Judge Busse to consider the following alternative forms of release in the order listed: (1) personal recognizance, (2) personal recognizance with non-monetary conditions, (3) release upon the execution of an unsecured appearance bond, (4) release on monetary bail with the accused having the option of posting ten per cent (10%) of the bail amount with the court clerk, with that deposit returnable upon performance. To cure the alleged due process deficiencies, plaintiffs ask the court to order Judge Busse to follow certain procedures. The procedures relate to and are designed to implement the equal protection remedies. First, they seek an informal hearing upon arrest for each accused where an initial determination of the least restrictive means of release will be made and the accused immediately released upon meeting those conditions. Second, if the accused is not released pursuant to the informal hearing, they argue that due process requires a formal hearing within twenty-four (24) hours of arrest to determine individually the least restrictive means of assuring presence at trial. Plaintiffs assert that at the hearing, the burden must be on the State to demonstrate the need for conditions of release more stringent than personal recognizance. If Judge Busse determines that other than personal recognizance is required, then plaintiffs contend he must give a written statement of reasons with supporting findings of fact.

## THE YOUNGER DOCTRINE

In *Younger v. Harris, supra,* and *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court examined and set forth basic standards delineating the proper role of a federal court, in a case pending before it and otherwise within its jurisdiction, when litigation between the same parties and raising the same issues is or apparently soon will be pending in a state court. In *Younger,* the Court ruled that the Federal District Court should issue neither a declaratory judgment nor an injunction but should dismiss the case where the already pending state proceeding was a criminal prosecution and the federal plaintiff sought to invalidate the statute under which the state prosecution was brought. The "vital consideration" underlying the *Younger* doctrine of nonintervention was the "notion of comity" reflecting basic concerns of federalism. That notion counsels against interference by federal courts with legitimate state functions, particularly with the operation of state courts. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486 (1977).

In addressing a *Younger* issue, the court must engage in a two-step analysis. First, it must determine if the *Younger* principles of comity and federalism apply. To make that determination, the court must identify the pending state proceedings, if any, that will be interfered with. Once those proceedings have been identified, the court must determine whether the State's interest in those proceedings and the process of which they are a part is sufficiently strong to invoke the principles of comity and federalism.

Once the principles of comity and federalism have been invoked, the court must determine whether classic equitable principles as applied in this context still mandate relief. That is, the court must ascertain whether there are adequate remedies available in the pending state proceedings and whether the threatened irrepara-

ble injury is both great and immediate. Only if the court finds that there are no adequate state remedies and that the irreparable harm is great and immediate should the federal court act to vindicate the federal rights involved.

### 1. *The Principles of Comity and Federalism Apply*

At the time this action was filed, plaintiffs Mudd and Whitlow were incarcerated in the Allen County Jail in Allen County, Indiana. Both men had been arrested on charges of first degree burglary and were being detained prior to trial pursuant to the order of defendant Busse setting bail. Plaintiff Mudd was arrested on December 31, 1974. Plaintiff Whitlow was arrested on January 5, 1975. Both men had been arrested pursuant to arrest warrants issued on December 23, 1974 which set bond at $5,000. The bonds were set pursuant to the bond schedule adopted by the Allen County Circuit Court in accordance with Ind.Code § 35–1–17–5 (Burns Supp.1976). On January 6, 1975, both men appeared before Judge Busse without counsel. At that time, both men apparently moved for a bond reduction, which motions were denied. On January 20, 1975, public defenders were appointed to represent plaintiffs Mudd and Whitlow in their state criminal prosecutions. This federal class action was instituted on January 22, 1975, two days later, by the filing of a detailed seventeen (17) page complaint.

Thus, it is clear that at the time this action was filed, state criminal proceedings were pending. Such proceedings are now in progress for other members of the plaintiff class, although the proceedings concerning named plaintiffs Mudd and Whitlow have ended.[4] The definition of the plaintiff class virtually guarantees that some proceeding involving at least one member of the class is now pending or will be pending in the Allen Circuit Court at the time an order is entered in this case.

Plaintiffs argue that this action is not directed at a state criminal prosecution as such, but only at bail practices and procedures collateral and incidental to the state prosecution. They assert that under these circumstances *Younger* principles do not come into play, citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Any attempt to restrict the *Younger* doctrine to the situation where state criminal prosecutions as such are sought to be enjoined has been precluded by subsequent Supreme Court decisions. In *Huffman v. Pursue, Ltd., supra*, the Court held that federal interference with pending Ohio civil nuisance proceedings would also offend comity and federalism. In *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court stated that "the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases." 430 U.S. at 334, 97 S.Ct. at 1216–1217. In *Juidice*, the Court held that federal court interference with the State of New York's civil contempt process violated principles of comity and federalism. In *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Court held that the federal court interference with civil attachment proceedings brought by the State of Illinois violated the principles of comity and federalism. Those proceedings were collateral to a civil suit filed by the State to recover welfare payments that had allegedly been fraudulently obtained.

*Juidice* and *Trainor* make it clear that no hard and fast rule dictates whether the principles of comity and federalism come into play. Instead, the district court must determine whether the State interests involved in the particular proceedings at issue are sufficiently strong to invoke *Younger* principles.

Plaintiffs attack the bail setting practices and procedures of the defendant Busse. It is not alleged that Busse's practices violate the applicable Indiana statutes or regulations. On the contrary, it is apparent that

---

4. Although the class representatives are no longer pretrial detainees, that fact does not

moot this action. *See Mudd v. Busse, supra*, 68 F.R.D. at 532.

defendant Busse follows the general guidelines for the Indiana bail system as set forth in the statutes. *See, e. g.,* Ind.Code § 35-1-17-5 (Burns Supp.1976) and Ind. Code § 35-1-18-1 (Burns 1975). Thus, although plaintiffs maintain that they are not challenging the constitutionality of the State laws providing for the setting of bail or the setting of bail schedules, they do challenge practices which appear consistent with the statutory framework and which are apparently followed in some respects by other judicial officers in the State of Indiana.

The bail setting process is an integral part of the criminal justice system in Indiana. Although that process may not be technically included within the prosecution itself and thus defects in the setting of bail may not be raised as a defense to the prosecution, *Holguin v. State,* 256 Ind. 371, 269 N.E.2d 159, 160-61 (1971); *Bozovichar v. State,* 230 Ind. 358, 103 N.E.2d 680, 682 (1952), that does not minimize the State's interest in the bail system. Indeed, given the close relationship of the bail system to the criminal prosecution itself, the State's interest in the practices and procedures of that system is equal to if not greater than the processes in *Juidice* and *Hernandez. See Wallace v. Kern,* 520 F.2d 400 (2d Cir. 1975), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976).

Not only is the State's interest in its pre-trial detention process sufficient to invoke the principles of comity and federalism, but plaintiffs' argument that the process is not a court proceeding within the doctrine of *Younger* and *Huffman* and therefore any injunction directed at the bail setting practices of defendant Busse would not interfere with a court proceeding must also fail. A similar argument was made and rejected in *Trainor v. Hernandez,* 431 U.S. at 446, 97 S.Ct. at 1919, n. 9. There, the Illinois attachment procedures were under attack. Plaintiffs argued that the underlying fraud action would not be interfered with and in fact could continue unimpeded. Moreover, they asserted that the attachment proceeding was not a court proceeding. The Court, however, stated that the attachment was issued by a court clerk and was very much a part of the underlying action for fraud. The Court noted that the attachment contained a return date on which the parties were to appear in court where they could contest the validity of the attachment. Similarly, the bail under attack here was set pursuant to a court order. Pursuant to well-settled Indiana procedure which will be more fully outlined below, plaintiffs had several opportunities to appear in court to contest the validity of the bail setting practices. Thus, for *Younger* purposes, the bail setting practices of defendant Busse are very much a part of the criminal prosecution. Accordingly, plaintiffs are asking this court to interfere with criminal proceedings pending both now and at the time this suit was filed. The principles of comity and federalism therefore apply.

Not only does the fact that plaintiffs seek relief directed at pending criminal proceedings invoke the principles of comity and federalism, but so, too, does the nature of the relief sought. The relief sought by the plaintiffs would "contemplate interruption of state proceedings to adjudicate assertions of noncompliance . . ." which the Supreme Court found in conflict with principles of equitable restraint in *O'Shea v. Littleton,* 414 U.S. 499, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

The plaintiffs in *O'Shea* brought a class action against a county magistrate and an associate judge of a county circuit court. They alleged that the defendants had engaged in racially discriminatory bail and sentencing practices. One of the alleged constitutional infringements was that the defendants set bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or the circumstances of an individual accused—almost precisely the claim asserted here. In reversing a district court dismissal, the United States Court of Appeals for the Seventh Circuit contemplated an injunction preventing this practice as well as alleged abuses of sentencing and the accused's right

to jury trial. The Court of Appeals also contemplated periodic reports of various types of aggregate data on actions on bail and sentencing.

The Supreme Court reversed. The Court held as a threshold matter that the plaintiffs lacked standing to bring the action. It did not stop there, however. It went on to hold that, in any event, *Younger* mandated dismissal. The contemplated injunction directed at the discretionary acts of a judge was found to violate comity principles since it would require continuous supervision by the federal court over the conduct of the state judges. The Court stressed that "an injunction against acts which might occur in the course of future criminal proceedings would necessarily impose continuing obligations of compliance" and that allegations of noncompliance by class members in federal court would work a continuous intrusion into the daily conduct of state criminal proceedings.

In *Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975), *cert. denied*, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976), the United States Court of Appeals for the Second Circuit found that *O'Shea* controlled the disposition of a class action brought by pretrial detainees challenging the bail practices in Kings County, New York. Plaintiffs there relied on equal protection and due process arguments strikingly similar to those espoused by the plaintiffs here. They sought, *inter alia*, an evidentiary hearing on the question of bail within seventy-two (72) hours after arraignment and a written statement by the judge containing his reasons for fixing bail whenever a bail decision is made.

The lower court had ordered that an evidentiary hearing be had on demand at any time after 72 hours from the original arraignment and whenever new evidence or changes in facts justified a hearing. The court specified further that the State would be required to present evidence of the need for monetary bail and the reasons why alternate forms of release would not assure a defendant's return for trial. The court also ordered the judges to make written state-ments of their reasons for denying or fixing bail. The United States Court of Appeals for the Second Circuit found that the district judge's order violated comity principles, relying on *O'Shea* and distinguishing *Gerstein v. Pugh*, 420 U.S. 103, 108, n. 9, 95 S.Ct. 854, 860, 43 L.Ed.2d 54 (1975).

Both *O'Shea* and *Wallace* involved an appellate court reversal of a lower court order found to impermissibly intrude on state court functions on a continuous basis. The issue which naturally arises is what effect, if any, those cases have on the instant action where no relief has yet been ordered.

At the very least, those cases dictate that this court carefully weigh the intrusive effect of the relief sought before ordering such relief. Most of the relief sought by the plaintiffs will invite the continuous or piecemeal interruptions of state court proceedings *O'Shea* found objectionable. As outlined above, plaintiffs do not seek merely to set up general procedural mechanisms in defendant Busse's court. If plaintiffs merely sought to compel defendant Busse to hold a hearing within a reasonable time after arrest on the issue of setting bail, there would be minimal intrusive effect. This court could order that such a procedure be adopted and once it was integrated with the existing practices, the order would be virtually self-enforcing. Hence, there would be little, if any, resort to this court to determine if this court's order was being disobeyed. Such was the type of relief ordered in *Gerstein, supra*.

But plaintiffs do not seek such self-enforcing relief. Instead, they seek orders directed at the exercise of Judge Busse's discretion. They not only seek an order compelling him to use the least restrictive means of pretrial release, but they seek to dictate the precise steps by which he is to arrive at that means. Such a wholesale regulation of the process of determining a means of pretrial release would work the very evils *O'Shea* sought to avoid. Every decision to set bail would involve an arguable violation of this court's order. Members of the plaintiff class would inundate this court with complaints that the method of

release set was not the least restrictive under the circumstances and would in effect transform this court into an appellate court reviewing Judge Busse's bail setting decisions. Such a function should be left to the state appellate court system. *Cf. Gold v. Connecticut*, 531 F.2d 91 (2d Cir. 1976).

In their brief, plaintiffs focus on the hearings and statement of reasons they seek. If these remedies could be isolated from the equal protection remedies, there might not be a severe *O'Shea* problem. These remedies, however, are inextricably intertwined with what this court perceives to be the thrust of their case—that Judge Busse use the least restrictive means of pretrial release. While the court in its discretion might be able to fashion procedural relief that would not involve mandates directed at Judge Busse's discretionary functions, such relief would be so incomplete as to in effect deny plaintiffs' claims. The better course would be to deny relief altogether so that the state courts could fashion complete relief and provide effective supervision.

Thus, while the comity concerns expressed in *O'Shea* and *Wallace v. Kern*, supra, might not require dismissal of an action by a district court in every circumstance, the nature and circumstances of this case would require that result absent some overriding equitable consideration. *O'Shea* itself supports this conclusion. There, the Court, after concluding that the basic requisites of the issuance of equitable relief were absent, stated:

"Considering the availability of other avenues of relief open to respondents for the serious conduct they assert, and abrasive and unmanageable intercession which the injunctive relief they seek would represent, we conclude that, apart from the absence of an existing case or controversy presented by respondents for adjudication, *the Court of Appeals erred in deciding that the District Court should*

*entertain respondents' claim* (emphasis added)." 414 U.S. at 504, 94 S.Ct. at 680. The nature of plaintiffs' claim together with the relief that is a necessary concomitant of that claim presents the same considerations. Accordingly, the principle of comity invoked by the claim and relief sought point in the direction of dismissal.

2. *There is an adequate remedy in the state courts*

■ Comity does not preclude federal court action where there is no meaningful opportunity to present the federal claims in the state proceeding. But in order for *Younger* to apply, plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973), and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, supra, 97 S.Ct. at 1218.

■ There are at least two procedural avenues available to the plaintiffs whereby they can pursue their federal claims. The first is the motion to reduce bail pursuant to Ind.Code § 35–4.1–2–1 (Burns 1975) and Ind.Code § 35–1–17–5(b) (Burns Supp. 1976).[5] That motion must be in writing unless the court permits it to be made orally and must be made to the judge and court to which the accused's case has been assigned. The motion can be made at any time and is therefore available from the moment at which bail is first set. If the motion is denied by the trial court, that denial is considered a final judgment and is appealable. *State ex rel. Peak v. Marion Criminal Court*, 246 Ind. 118, 203 N.E.2d 301, 302–303 (1965). At the appellate level, there is a presumption that the bail set is reasonable. The appellate court will reduce the amount of bail only if it finds the trial judge's decision clearly erroneous.

---

5. Ind.Code § 35–1–17–5(b) provides:
When considering a motion to reduce bail, the court shall consider the fact that the alleged offense was committed while the defendant was released on bail or his own re-

cognizance for a prior offense as a factor mitigating strongly against an order to reduce bail or release the defendant on his own recognizance.

The motion to reduce bail is a statutory creature. It was designed primarily as a vehicle to review bail setting decisions within the Indiana bail system as presently constituted. Of course, plaintiffs seek a determination on far broader issues. The excessiveness of bail is only a concern of last resort. They seek consideration of less restrictive means of pretrial release than bail bonds. They also challenge the procedures utilized by Judge Busse in arriving at a means of pretrial release.

While the motion generally operates within the bail system which plaintiffs attack, Indiana trial and appellate courts will entertain attacks on the entire system as implemented by Judge Busse on federal constitutional grounds. The Supreme Court of Indiana has recognized that the state courts are vested with authority to adjudicate federal constitutional claims. *Reilly v. Robertson*, 360 N.E.2d 171, 174 (Ind.1977), *petition for cert. filed*, 45 U.S. L.W. 3779 (U.S., May 31, 1977). *See also Green v. Klinkofe*, 422 F.Supp. 1021, 1026 (N.D.Ind.1976). Since the Indiana courts are cognizant of this authority, there is no reason to doubt that Judge Busse as well as the state appellate tribunals will entertain plaintiffs' federal constitutional claims on a motion to reduce bail. Although such motion may have been primarily designed by the legislature to review bail decisions for excessiveness, Indiana courts have recognized that the legislature has the authority to limit the injunctive power of Indiana courts only so "long as it does not prevent parties from obtaining due process in the proceedings created by statute." *State ex rel. Root v. Circuit Court of Allen County*, 259 Ind. 500, 505, 289 N.E.2d 503, 506 (1972). Plaintiffs attack the Indiana bail system as implemented by Judge Busse on equal protection and due process grounds. Consequently, it is abundantly clear that the Indiana courts will not construe the motion to reduce bail so narrowly as to preclude consideration of federal constitutional claims

against the system through the mechanism of review created by the legislature. *See also Bozovichar v. State*, 230 Ind. 358, 103 N.E.2d 680, 682–83 (1952).

The other procedural avenue available to the plaintiffs is the petition for writ of habeas corpus pursuant to Ind.Code § 34–1–57–1 *et seq.* (Burns 1973). The petition must be filed in the court in which the indictment is pending. *State ex rel. Smith v. Marion Circuit Court*, 230 Ind. 21, 101 N.E.2d 272 (1951). It may be filed immediately after the accused is incarcerated but must be filed prior to the pendency of the appeal of a conviction. *State ex rel. Peak v. Marion Criminal Court, Division One*, 246 Ind. 118, 203 N.E.2d 301, 303 (1965). A denial of the petition is appealable from the trial court.

Although the writ of habeas corpus has been incorporated into the Indiana Code, habeas corpus is not a statutory proceeding in Indiana. *Witte v. Dowd*, 230 Ind. 485, 102 N.E.2d 630 (Ind.1951). As evidenced in Ind.Code § 34–1–57–1 (Burns 1973), the writ is intended as a broad remedy for illegal restraint of a person's liberty.[6] The United States Court of Appeals for the Seventh Circuit has specifically rejected the argument that habeas corpus in Indiana courts is a futile remedy for an infringement of constitutional rights. In *Davis v. Dowd*, 119 F.2d 338 (7th Cir. 1941), the court stated:

> It would be preposterous for us to assume in advance that the courts of Indiana will deny to petitioner rights guaranteed to him by the Constitution of the United States and Indiana and the statutes of that state.

*See also Steffel v. Thompson*, 415 U.S. 452, 460–61, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The Supreme Court of Indiana has zealously guarded the constitutional rights of the accused in a bail context. In *Hobbs v. Lindsey*, 240 Ind. 74, 162 N.E.2d 85, 87 (1959), the court recognized "the right and

---

**6.** In *Gerstein v. Pugh, supra,* upon which the plaintiffs rely, there was no analogous remedy. The federal plaintiffs there had no right to institute state habeas corpus proceedings ex-

cept perhaps in exceptional circumstances. There is no such limitation on the Indiana habeas corpus remedy. A person may petition for a writ as soon as he is taken into custody.

duty to review the action of the trial court where it is asserted that an abuse of discretion has resulted in the denial of the constitutional rights of an accused to be let to bail, which bail shall not be excessive." It is therefore beyond doubt that the Indiana courts will entertain all of plaintiffs' constitutional claims under this procedure and that they will be faithful to their constitutional responsibility under U.S.Const. art. VI to be "bound" by the federal constitution.[7]

Plaintiffs do not dispute the existence of these remedies, but they argue that they are inadequate under the circumstances. First, they point to the fact that since the defendant became judge of the Allen County Circuit Court in 1971, no interlocutory appeals have been taken from a bail determination or a bond reduction motion in his court. This fact alone is irrelevant. Whether an appeal is actually taken or a hearing is actually held fails to address the relevant consideration: whether there is a meaningful opportunity for review. *See Juidice v. Vail, supra,* 430 U.S., at 336–337, 97 S.Ct., at 1218; *Huffman v. Pursue, supra,* 420 U.S., at 608, 95 S.Ct., at 1210.

Second, they emphasize that it is Judge Busse, the defendant in this case, who must first rule on the motion to reduce bail or the petition for writ of habeas corpus. Thus, they argue that the state legal remedies are inadequate under *Younger* unless they are independent of the system which the plaintiffs seek to challenge. Mr. Justice Stevens has made similar arguments in his concurring opinion in *Juidice* and his dissenting opinion in *Trainor*. It is clear, however, that a majority of the Court does not accept this argument. Plaintiffs have made no allegations that defendant Busse is acting

in bad faith. Absent proof of such bad faith, the presumption that he will seriously and expeditiously consider in good faith any constitutional claims raised must stand.[8]

Third, they argue that since the question of excessive bail becomes moot once a defendant's case is disposed of by conviction or acquittal, the aforementioned remedies are hollow ones at best. It is clear that plaintiffs cannot raise challenges to the setting of bail for the first time on appeal from a conviction in a trial court. *Holguin v. State,* 256 Ind. 371, 269 N.E.2d 159, 160–61 (1971). But it is also apparent that the question of excessive bail may be considered through a habeas corpus proceeding instituted prior to conviction. Claims asserted through a habeas corpus petition alleging the denial of the right to bail have reached the Supreme Court of Indiana and that court has reached the merits of those petitions. *See Hobbs v. Lindsey,* 240 Ind. 74, 162 N.E.2d 85 (1959); *Green v. Petit,* 222 Ind. 467, 54 N.E.2d 281 (1944). In *Hobbs v. Lindsey, supra,* the court found the bail set excessive under the circumstances *and ordered the trial court to sustain the accused's motion for a new trial.* Thus, plaintiffs' assertion that the avenues of appeal open to them are meaningless in the face of the mootness rule rests only on conjecture. Both named plaintiffs assert they made motions to reduce bail, but they admit they made no effort to appeal. The initial setting of bail and the motion to reduce were part of the state judicial process. That process having been initiated, plaintiffs must exhaust their state appellate remedies or at least make a good faith attempt to do so prior to instituting a federal action. *Huffman v. Pursue, Ltd., supra,* 420 U.S., at 608–610, 95 S.Ct., at 1210–1211.[9]

**7.** Similar claims have already been entertained on a habeas petition. In *Vacendak v. State,* 261 Ind. 317, 302 N.E.2d 779 (1973), the Supreme Court of Indiana held on a habeas petition that an order summarily increasing bond without a hearing violated due process. The Court further held that due process required notice and a hearing upon an application of the State to increase bond.

**8.** It should also be noted that Judge Busse has the option of appointing a special judge to hear such challenges. Plaintiffs herein may apply for a change of judge. *See generally* Ind.Code § 35–2–1–1 *et seq.* (Burns 1975); Rules 12 & 13, Indiana Rules of Criminal Procedure.

**9.** As in *Huffman,* this does not undermine the holding in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) that one seeking redress under 42 U.S.C. § 1983 for a depriva-

Plaintiffs contend that such an exhaustion requirement is unfair under the circumstances. They point to the fact that members of the plaintiff class, as indigents, must rely on public defenders to represent them and that these defenders are often not appointed until several weeks after bail has been set. Thus, while the appellate remedies are available to them, they are often only available without the assistance of counsel. They assert that such remedies are meaningless under the circumstances, or are at least untimely.[10]

There is little doubt that the initial filing of the motion or petition can be effectively done pro se. Plaintiffs Mudd and Whitlow pro se requested a reduction of their bonds. Once a public defender is appointed, the remedies discussed above are clearly available to the plaintiffs. So long as the initial motion or petition is timely filed, as plaintiffs Mudd and Whitlow apparently did pro se, there is no question but that the Indiana appellate courts will be extremely receptive to hearing their claims on appeal whether or not those claims are filed with the assistance of counsel. Cf. Ind.Code § 35–10–2–4 (Burns 1975). They are keenly aware of the need for a speedy adjudication of claims involving constitutional rights to pretrial release and of the circumstances in which those claims often are first raised. See Bozovichar v. State, 230 Ind. 358, 103 N.E.2d 680, 682 (1952).

The crux of the plaintiffs' argument concerns not whether the remedies are available but whether they are timely. "Dismissal of the federal suit 'naturally presupposes the opportunity to raise and have timely decided by a competent state [court] tribunal the federal issues involved.'" Trainor v. Hernandez, supra, 431 U.S. at 441, 97 S.Ct. at 1917, quoting Gibson v. Berryhill,

411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed. 488 (1973). Their argument here is intertwined with their argument that they are threatened with irreparable harm which is great and immediate. Essentially, they argue that since they are or will be incarcerated pursuant to the order of Judge Busse setting bail without the procedural and substantive guarantees to which they claim they are entitled, any existing Indiana procedures will be untimely regardless of how well they work or how receptive the Indiana courts are to their claims. The timeliness issue will be resolved with the issue of irreparable harm.

3. *Federal intervention is not justified on the ground that plaintiffs face irreparable harm.*

Plaintiffs argue that their incarceration under the present practices and procedures of defendant Busse is great and immediate irreparable harm which mandates federal intervention. In support of this contention they rely on Gerstein v. Pugh, supra.

In *Gerstein*, the federal plaintiffs were pretrial detainees who were being held on informations for substantial periods of time without individual probable cause determinations. Under Florida law, a prosecutor could charge non-capital crimes by information without a prior hearing and without leave of court. A suspect charged by information had no right to a preliminary hearing to determine probable cause for pretrial detention. The Court held that the Fourth Amendment required that there be a "fair and reliable determination of probable cause" made by a judicial officer "either before or promptly after arrest." *Gerstein, supra,* 420 U.S. at 125, 95 S.Ct. at 868–69.

---

tion of federal rights need not first initiate state proceedings based on related state causes of action. In the instant case the state bail setting process had been initiated. Members of the plaintiff class, such as the named plaintiffs, had in fact initiated proceedings in Judge Busse's court. Under these circumstances, they had an obligation to exhaust the appellate remedies which afforded them a reasonable probability of relief.

10. Plaintiffs make no claim that they have a constitutional right to appointed counsel at the time these pretrial procedures are available to them. Indeed, since the issues raised through these proceedings relate only to pretrial custody, it is highly doubtful whether they have such a federal right. See Gerstein v. Pugh, supra, 420 U.S. at 122–23, 95 S.Ct. at 867–68.

In *Gerstein*, plaintiffs had filed a class action claiming a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief. The district court held that plaintiffs' claim for relief was not barred by the *Younger* doctrine. The Supreme Court, in a footnote, approved that determination. 420 U.S. at 108 n.9, 95 S.Ct. at 860.

Plaintiffs in the instant action argue that *Gerstein* supports their claim that they are suffering or are threatened with irreparable harm. They point out that in both cases plaintiffs are pretrial detainees who allege that their detention occurs without a prior judicial determination that is constitutionally required. They urge that this court follow the *Gerstein* example and order federal relief.

Although a showing of irreparable injury is a traditional prerequisite to obtaining equitable relief, the Court in *Younger* declared that such a showing is insufficient to justify federal interference with pending state criminal proceedings unless that injury is "both great and immediate." *Younger v. Harris, supra,* 401 U.S. at 46, 91 S.Ct. at 751, *citing Fenner v. Boykin,* 271 U.S. 240, 243–44, 46 S.Ct. 492–93, 70 L.Ed. 927 (1926). The Court has applied the more stringent requirement of irreparable injury in every case in which it has found that the "vital consideration" of comity exists. *See Huffman v. Pursue, Ltd., supra; Juidice v. Vail, supra; Trainor v. Hernandez, supra.* Thus the "great and immediate requirement" applies here.

In order to satisfy this requirement, plaintiffs either must show that the defendant has acted in bad faith or out of a desire to harass the plaintiffs or they must demonstrate that other "extraordinary circumstances" exist. There is no suggestion that the defendant has acted in bad faith or with any intent to harass the named plaintiffs or members of their class. It is urged that the defendant's use of a master bond schedule is "flagrantly and patently viola-tive" of elementary principles of due process and equal protection. This court expresses no opinion on the constitutionality of the defendant's practices and procedures, but merely finds that these practices are not so flagrantly unconstitutional as to require immediate federal intervention.[11] Thus, in order to warrant federal intervention in the state criminal proceedings, "extraordinary circumstances" must render the state courts incapable of fully and fairly adjudicating the federal issues involved. To be extraordinary, the circumstances must create "an extraordinary pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Kugler v. Helfant,* 421 U.S. 117, 125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975).

The court has no doubt that this case involves a very real threat of injury. Nor does the court minimize the serious consequences—physical, psychological, and financial—which may follow from prolonged detention. Nevertheless, the circumstances of this case do not present the pressing need for immediate *federal* equitable relief that would justify intervention. Both the question of the "timeliness" of the state remedies and the issue of the "pressing need" for federal intervention turn on the circumstances of this case and the nature of the claims presented. These factors serve to distinguish this case from *Gerstein*.

Although *Gerstein* held that the Fourth Amendment required a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest, several aspects of that case are highly significant. First, it is clear that the plaintiffs here do not make the same constitutional claim as the *Gerstein* plaintiffs. They do not contest the validity of their arrests nor do they allege that they are being detained without a proper determination of probable cause that they have committed a crime.[12] Their detention is an

---

11. This conclusion should not be misunderstood as intimating any opinion on whether plaintiffs have been denied their constitutional rights.

12. Plaintiffs set forth a Fourth Amendment

**518**

issue only insofar as it relates to defendant Busse's pretrial release practices and procedures. This distinction has an important consequence for purposes of *Younger* analysis. The court must assume that the State of Indiana has already satisfied the probable cause requirement that was the subject matter of *Gerstein*. Thus, the probable cause determination that was ordered in *Gerstein* has in effect already been made in this case. When viewed in this light, the *Gerstein* analogy breaks down: the plaintiffs here are not being detained without the determination that was ordered in *Gerstein*. The State's interest in detaining plaintiffs has been identified to the extent that there is probable cause to believe that they have committed a crime. Admittedly, this interest is an insufficient one for purposes of testing a bail system since the sole legitimate governmental interest served by the bail system is assuring the presence of the accused at trial. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); *Duran v. Elrod*, 542 F.2d 998, 999 (7th Cir. 1976). But it is an interest in detention which deserves some weight when considering whether there is an extraordinary pressing need for immediate federal equitable relief.

The second basis for distinguishing *Gerstein* is the presence of the state remedies discussed above. Plaintiffs can pursue these remedies immediately after their incarceration. The *Gerstein* plaintiffs had no such opportunities. The motion to reduce and the habeas corpus petition may not result in an instantaneous adjudication of their constitutional claims and an immediate reformation of the bail practices and procedures under attack. But the procedural avenues are present and they are not futile avenues. Plaintiffs do not seek release from custody, but, rather, they seek reform of the Indiana bail system as implemented by Judge Busse.[13] Taking into account these procedural avenues, the nature of the claims asserted, and the relief sought and the factual circumstances of detention as outlined above, plaintiffs have not demonstrated extraordinary circumstances mandating federal equitable intervention.[14]

Thus, it is clear that dismissal is warranted under the abstention doctrine of *Younger v. Harris, supra.*[15]

### Order

Accordingly, the plaintiffs' complaint seeking injunctive and declaratory relief is hereby dismissed for failure to state a claim upon which relief may be granted.

Entered this 8th day of September, 1977.

---

claim in paragraph 46 of their complaint alleging that the "continuing arrest" and detention of the accused after his booking without equal and fair access to pretrial release becomes unreasonable and unlawful. They appear to have abandoned this claim as they do not rely on it in their motion for summary judgment. In any event, the claim, as alleged, does not suggest the same infirmities that the *Gerstein* plaintiffs were attacking.

**13.** Nothing in this Memorandum of Decision and Order should be taken as an expression of approval of Busse's bail practices and procedures.

**14.** For similar reasons, the court concludes that the state court remedies discussed above are timely under the circumstances and are therefore "adequate" for *Younger* purposes.

**15.** Although the dismissal of this case is based on *Younger* abstention, it is noteworthy that some of the policy considerations underlying the abstention doctrine in *Railroad Comm'n v.*

*Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) also apply here. Plaintiffs assert that they are not challenging the constitutionality of the state laws providing for the setting of bail, the methods by which it may be posted, and the setting of bail schedules. Yet they have also acknowledged that judicial action setting bail in a manner consistent with constitutional guarantees is possible within the governing state law framework. The Supreme Court of Indiana has never decided the question of whether the statutory framework or the Indiana Constitution in fact impliedly requires the practices and procedures which plaintiffs seek to compel on federal constitutional grounds. Thus it is possible that the state courts may interpret the Indiana Constitution or state statutes so as to eliminate or at least alter materially the federal constitutional questions presented. Since the court finds that dismissal is necessary under *Younger*, however, it need not decide the *Pullman* question.