Calvin C. MOUNKES, et al., Plaintiffs,

v.

Hon. Thomas CONKLIN,
et al., Defendants.

No. 95–4143–SAC.

United States District Court,
D. Kansas.

Feb. 2, 1996.

Memorandum Denying Extension of
Time to Seek Reconsideration
Feb. 12, 1996.

Michael F. Brunton, Topeka, KS, for plaintiffs.

Kevin D. Case, Office of the Attorney General, Kansas Judicial Center, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The plaintiffs bring this action pursuant to 42 U.S.C. § 1983. They allege that the bail bond system authorized by the Kansas Supreme Court Administrative Order No. 96 ("Order 96") and the Third Judicial District Court Rule 3.311 ("DCR 3.311") deprives them of constitutional rights to procedural and substantive due process, equal protection under the law and freedom from excessive bail. The plaintiffs seek a federal court order declaring Order 96 and DCR 3.311 illegal and void under the federal and state constitutions and enjoining the defendant judges of the Third Judicial District and the defendant justices of the Kansas Supreme Court from enforcing this order and rule.

The defendants jointly move to dismiss the plaintiffs' action. (Dk. 11). They argue the court lacks subject matter jurisdiction to review any final judgments entered in the criminal cases against the plaintiffs. They also argue that the federal court should abstain from intervening in the pending state criminal cases against the plaintiffs.

## STANDARDS GOVERNING MOTIONS

When defendants bring a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiffs must carry the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir.1990). In deciding a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.[1] *Cizek v. United States,* 953

1. Generally, conversion of Rule 12(b)(1) motions into motions for summary judgment will occur when the jurisdictional question is intertwined with the merits of the case. *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484

U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). The jurisdictional issues raised here are distinct and separate from the merits of the plaintiffs' case. The difference between Rule 12(b)(1) motions and Rule 56 motions "is not in the proce-

F.2d 1232, 1233 (10th Cir.1992); *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1440 (D.Kan.1993). The defendants here limit their motion to a facial challenge to the sufficiency of the plaintiffs' complaint. On such motions, the court accepts the well-pleaded material allegations as true and construes them to favor the plaintiff. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).

■ A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

■ On a Rule 12(b)(6) motion, the court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983) (footnote omitted). "[I]f the facts narrated by the

plaintiff 'do not at least outline or adumbrate' a viable claim, his complaint cannot pass Rule 12(b)(6) muster." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988) (quoting *Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 654 (7th Cir.1984)). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir.1989).

■ When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction. *Moir*, 895 F.2d at 269.

## FACTS AS ALLEGED IN THE PLAINTIFFS' COMPLAINT

Between May and July in 1995, all eight federal plaintiffs were arrested on state criminal charges filed in Shawnee County, Kansas. Three of the plaintiffs were arrested on more than one criminal case. There were thirteen state criminal cases pending against the eight plaintiffs when this civil rights complaint was filed in federal district court. Bail bond was offered in each of the thirteen cases.

In four of the thirteen cases, surety bonds, ranging in amounts between $250 and $500, were specified as the bail bond. In another four cases, own recognizance cash deposit ("OR-cash deposit") bonds, ranging in amounts between $500 and $5,000, were set. In the remaining five cases, cash bonds, ranging in amounts between $100 and $2,500, were specified. Of the thirteen cases, the plaintiffs allege that only Darlene Washington was unable to meet the bond requirements and was still incarcerated as of August 3, 1995. Washington was offered a $2,500 cash bond. The plaintiffs further allege that in five of the nine cases in which OR-cash deposit bonds or cash bonds were set, the plaintiffs were required to post the money

---

dures used but in the effect the ruling will have upon the parties." *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1440 n. 2 (D.Kan.1993). The defendants here attach to their motion copies of Order 96 and DCR

3.311. Since these are the same order and rule that the plaintiffs challenge as unconstitutional, the court is essentially not considering any matters outside of the plaintiffs' complaint.

themselves without the aid of sureties or family members.

What the plaintiffs do not allege is also important to note. They do not mention whether they ever sought or requested modification of the bonds set. Nor do they say whether they ever challenged the constitutionality of the administrative order and local rule in the original proceedings or in a separate habeas corpus action. Finally, the plaintiffs do not allege the particular status or posture of the different criminal cases.

## ORDER 96 AND DCR 3.311

In January of 1995, the Kansas Supreme Court issued its administrative Order 96 that offered an "own recognizance-cash deposit" ("OR-cash deposit") pretrial release program to all state judicial districts. For those judicial districts already using such a program, the court ordered them to adopt a local rule that substantially complied with the "example" which the court attached to Order 96. For those judicial districts not using such a program, the court authorized them to adopt such a rule whenever the judges of a district determined they should. The second paragraph to Order 96 plainly states that the OR-cash deposit pretrial release program would serve simply as one more means for pretrial release to those currently available by Kansas statute.[2]

On March 12, 1995, the Third Judicial District of Kansas adopted DCR 3.311, as its local rule counterpart to the example provided by the Kansas Supreme Court in Order 96. There are several material provisions to this rule. It includes an automatic bond schedule ("ABS") which sets the amount of bail bonds for certain offenses. The rule authorizes certain officers of the court who are sworn in as deputy clerks of the district court to permit persons in custody to post bonds in accordance with the rule. If the person in custody is not eligible for an ABS bond, then the person is to be brought before a judge for the setting of a bond. The rule generally outlines the various criteria relevant in considering the kind and amount of bail bond. The rule authorizes OR-cash deposit bonds on these conditions:

7. ... Any person determined eligible to be admitted bail on an OR-cash deposit bond under this rule or OR bonds set as OR cash deposit by a district judge, shall deposit with the clerk of the court cash equal to 10 percent of the amount of the bond and execute a bail bond in the total amount of the bond. All other conditions of the bond set by the court and this rule must be satisfied.

8. ... [T]he cash deposit shall be held by the Clerk of the Court until such time as the accused has fully performed all conditions of the bond and is discharged from all appearance and financial obligations to the court. When an accused has been so discharged, 90% of the cash deposit shall be returned to the accused upon surrender of the cash deposit receipt previously issued by the Clerk. Ten percent of the cash deposit shall be retained by the Clerk as an administrative fee.

9. A cash receipt for an OR–Cash deposit bail bond shall be issued only to the person being released on bond. Any person posting cash for another person shall be informed that any cash posted as a bail bond is the property of the accused person and may be subject to forfeiture, application to payment of court ordered financial obligations and will be refunded only to the arrested person. Any arrangements to furnish bond money are between the lender and the accused person.

10. When an accused person who has posted a cash deposit bail bond is discharged from all appearance and financial obligations to the court and files the receipt for the cash deposit with the Clerk, the refundable portion of the cash deposit not allocated to court ordered financial obligations shall be refunded to the accused or assignee by the Clerk.

. . . .

13. All bail bonds issued in this judicial district are subject to this rule and the General Bond Conditions attached hereto.

---

**2.** At K.S.A.1994 Supp. 22–2802, Kansas law authorizes pretrial release on surety bonds or cash deposit bonds. Kansas law also recognizes a pretrial release on recognizance program and a supervised release program. K.S.A. 22–2814, *et seq.*

Other special conditions may also be imposed by the court as a requirement of release on any bail bond.

. . . .

15. Bail bonds designated as OR–Cash, Cash or Professional Surety shall be written only on terms specified by a judge of the district court. If an accused person requests release on a professional surety bond when cash or an OR-cash deposit bond has been specified, the deputy clerk shall contact the judge authorizing the bond for modification of the bond.

16. This rule shall not limit or restrict the right of any person to seek or obtain pretrial release under other statutory methods of admitting accused persons to bail or the authority of a judge of the district court to determine bail. The participation of an accused person in this program shall be on a voluntary basis.

(Dk. 12; Ex. B–2, B–3). The rule says that a person is eligible for an OR-cash deposit bond when the bail bond amount under the ABS is more than $1,000 and less than $2,501 and the accused in custody or a private surety meets other criteria. (Dk. 12, Ex. B–2, ¶¶ 6 and 7). A person may also be eligible for an OR-cash deposit bond "upon special screening and upon recommendation of a person authorized to permit posting of a bond in accordance with this rule." (Dk. 12, Ex. B–2, ¶ 7).

## CONSTITUTIONAL CHALLENGES

Between the conclusory allegations in their complaint and the paucity of arguments in their response brief, the plaintiffs offer little on which to hang their **three** general constitutional challenges. The plaintiffs first argue that "cash only bonds" deny them of their constitutional right to post a surety bond, constitute excessive bail that lacks a rational relationship to insuring an accused's appearance, and violate their right to equal protection. What the plaintiffs mean by "cash only

bonds" is revealed at page two of their amended complaint:

> Judges in the Third Judicial District routinely require pre-trial bonds to be posted by cash only. Cash only bonds may not be made by sureties, private or commercial, and may not be posted by anyone but the accused.

(Dk. 2 at 2). The plaintiffs do not allege the manner in which Order 96 or DCR 3.311 specifically require or authorize district judges to set cash bonds on such conditions. This challenge appears to be with the judges' application of DCR 3.311 rather than its actual terms.

The plaintiffs' second constitutional challenge assails the OR-cash deposit bail bonds authorized by these provisions. The plaintiffs argue such bonds suffer from the same constitutional deficiencies as the cash only bonds. In addition, the plaintiffs claim the ten percent administrative fee is a tax on their right to bail that violates their right to due process and adversely impacts their access to the bail system.

The plaintiffs' final constitutional challenge concerns paragraphs nine and ten of DCR 3.311 which provide that the cash posted for an OR-cash deposit bail bond or a cash deposit bail bond is subject to court ordered financial obligations. The plaintiffs argue these provisions transform the appearance bond into a supersedeas bond and lack any rational basis in the purposes behind appearance bonds.

## LACK OF SUBJECT MATTER JURISDICTION

■ It is an axiom that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in judicial proceedings. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker*[3] and *Feldman* decisions

---

**3.** In *Rooker,* the plaintiff filed a federal suit to overturn a state court decision which had been affirmed by that state's highest court and which had been denied review by the United States Supreme Court. The federal district court dismissed the case for lack of subject matter jurisdiction, and the Supreme Court affirmed saying: "[N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character.

have become known as the *Rooker–Feldman* doctrine. *Musslewhite v. State Bar of Texas,* 32 F.3d 942, 946 n. 11 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995); *Fariello v. Campbell,* 860 F.Supp. 54, 65 (E.D.N.Y.1994).

▪ In *Rooker,* the Court said that Congress in enacting 28 U.S.C. § 1257 had foreclosed federal courts, other than the Supreme Court, from reviewing final judgments of state courts. 263 U.S. at 416, 44 S.Ct. at 150. Federal district courts, as courts of original jurisdiction, lack authority to review state court decisions. *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir. 1986). *Rooker* effectively serves as "an independent basis for prohibiting collateral attack on state court judgments." *U.S. Industries, Inc. v. Laborde,* 794 F.Supp. 454, 462 (D.Puerto Rico 1992).

▪ In *Feldman,* the Supreme Court extended that rule to a state court's final judgment in a bar admission matter.[4] Specifically, the Court in *Feldman* held that federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 460 U.S. at 486, 103 S.Ct. at 1317. "The *Feldman* rule is soundly and clearly based in the language of 28 U.S.C. § 1257 and in the public policy of federalism." *Facio v. Jones,* 929 F.2d 541, 545 (10th Cir.1991); *see DeVargas v. Montoya,* 796 F.2d 1245, 1255 (10th Cir.1986) (As a matter of federal-state comity, the district court does not look behind the state court judgment), *overruled on other grounds, Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir.1987).

▪ The reach of the *Rooker–Feldman* doctrine is substantial. It is not limited to the decisions coming from the state's highest court. *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 221 (9th Cir.1994). Nor does it matter whether the state court deci-

sions are final or interlocutory. *Gentner v. Shulman,* 55 F.3d 87, 89 (2nd Cir.1995). The doctrine precludes federal jurisdiction even when the state court's decision implicates federal constitutional issues, *id.,* or when the plaintiff brings his federal action under federal civil rights statutes, *Ritter v. Ross,* 992 F.2d 750, 754 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *see, e.g., Facio v. Jones,* 929 F.2d at 544; *DeVargas v. Montoya,* 796 F.2d at 1255. Finally, the doctrine applies to attempts not only to review directly a state court decision but also to review indirectly a state court decision when the federal claim is "inextricably intertwined" with the merits of the state court's decision. *Dubinka,* 23 F.3d at 221; *Facio,* 929 F.2d at 543.

▪ "The only exception to . . . the *Rooker–Feldman* doctrine, is where a federal statute authorizes federal appellate review of final state court decisions." *Fariello,* 860 F.Supp. at 65; *see Ritter v. Ross,* 992 F.2d 750, 753 (7th Cir.1993) ("*Rooker–Feldman* 'simply forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review.'" (quoting James S. Liebman, *Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity,* 92 Colum.L.Rev. 1997, 2008 n. 46 (1992)), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). For example, Congress authorized federal district courts to review state court decisions in habeas corpus proceedings. *Ritter,* 992 F.2d at 753; *Fariello,* 860 F.Supp. at 65; *see Illinois Legislative Redistricting Commission v. LaPaille,* 786 F.Supp. 704, 710 (N.D.Ill.) (the exception to *Rooker–Feldman* is habeas corpus cases), *aff'd,* 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).

The plaintiffs say they are not seeking federal court review of any particular state court decisions on bail bonds. Rather, they characterize their claim as a general chal-

---

To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 416, 44 S.Ct. at 150.

4. In *Feldman,* the plaintiffs wanted waivers from the District of Columbia's rule that required all bar applicants to have degrees from accredited law schools. Unsuccessful in state court, the plaintiffs sued in federal court asserting constitutional right violations.

lenge to the Third Judicial District's bail bond procedure.

The *Rooker–Feldman* doctrine recognizes circumstances when a federal court may hear a general challenge to state court rules if it does "not require review of a final state-court judgment in a particular case." *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317. The distinction between a permissible general challenge to rules and an impermissible appeal of a state court judgment often is subtle and "difficult to draw." *Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1433 (10th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *see Dubinka v. Judges of Superior Court,* 23 F.3d at 221. There are no bright dividing lines. *Ritter,* 992 F.2d at 754. It is a case-by-case determination focused principally on the question whether the district court is essentially " 'being called upon to review the state-court decision.' " *Fariello v. Campbell,* 860 F.Supp. at 65 (quoting *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16); *see Ritter,* 992 F.2d at 754 ("Do the constitutional claims, then, force a district court to assume appellate jurisdiction over the state court judgment?").

To the extent that the plaintiffs seek to have this federal court review and declare unconstitutional the Third Judicial District judges' "routine" decisions that have required "cash only bonds" and the condition that the cash must be posted by the accused, this federal court lacks jurisdiction to grant such relief. To decide this claim, "the district court would have to go beyond the mere review of the state rule *as promulgated,* to an examination of the rule *as applied* by the state court to the particular factual circumstances of Feldman's [the plaintiff's] case." *Razatos v. Colorado Supreme Court,* 746 F.2d at 1433. The plaintiffs do not show that either the Kansas Supreme Court or the Third Judicial District has promulgated any rule or regulation requiring "cash only bonds" on the conditions stated above. "Courts have generally concluded that claims are inextricably intertwined when the district court must scrutinize both the challenged rule and the state court's application of that rule." *Dubinka,* 23 F.3d at 222 (citations

omitted). That the plaintiffs can see some pattern or routine in the state court decisions does not elevate the separate bail bond decisions into a promulgated rule or policy. Each of the state decisions in that alleged pattern or chain was the result of a separate bail bond proceeding that adjudicated each accused's individual circumstances. For these reasons, the court does not have jurisdiction to review those decisions.

The remaining allegations in the plaintiffs' complaint involve general attacks on the constitutionality of Order 96 and DCR 3.311. The court finds that these allegations are not inextricably intertwined with the individual state court bail bond decisions. The court could decide those claims by looking at the order and rule as promulgated. The court finds that the plaintiffs have framed these other claims as to permit federal district court subject matter jurisdiction.

## ABSTENTION

"Abstention is, of course, the exception and not the rule." *Houston v. Hill,* 482 U.S. at 467, 107 S.Ct. at 2512. Indeed, "federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.' " *Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635, 638–39 (6th Cir.1990) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). There are, however, several well-established situations where abstention is proper, and one of these is explained in *Younger v. Harris,* 401 U.S. 37, 56, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971).

In *Younger,* the Supreme Court held that federal courts are not to enjoin pending state court criminal proceedings except in certain, narrow circumstances. 401 U.S. 37, 56, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971). Calling this part of its "longstanding policy against federal court interference," the Supreme Court grounded the *Younger* abstention doctrine on concerns of comity, federalism, and equity. 401 U.S. at 43–44, 91 S.Ct. at 750–51; *see CECOS Int'l, Inc. v. Jorling,* 895 F.2d 66, 70 (2nd Cir.1990). The Supreme Court later extended *Younger* absten-

tion to actions for declaratory judgment on the constitutionality of state law, *see Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971), and to state civil proceedings, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

■ *Younger* abstention is appropriate when "(1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Dubinka*, 23 F.3d at 223 (citations omitted); *see also Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2nd Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995). These three requirements correspond with the comity, federalism, and equity concerns expressed in *Younger*. The first two requirements address whether *Younger* principles of comity and federalism are present. The court begins with identifying the state proceedings that will be interfered with and then assessing whether the state interests are sufficient to trigger the principles of comity and federalism. *Mudd v. Busse*, 437 F.Supp. 505, 509 (N.D.Ind.1977), *aff'd*, 582 F.2d 1283 (7th Cir. 1978) (Table), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979). The last requirement speaks to the equity concern. The court determines whether there are adequate state remedies to address the threatened irreparable injury. *Id.* at 509–510. The court finds that all three requirements are met here.

■ For purposes of the first requirement, a state prosecution is considered to be pending if as of the filing of the federal complaint not all state appellate remedies have been exhausted. *Hansel*, 56 F.3d at

393; *Dubinka*, 23 F.3d at 223; *Levy v. Lerner*, 853 F.Supp. 636, 641 (E.D.N.Y.1994), *aff'd*, 52 F.3d 312 (2nd Cir.1995) (Table). The court reasonably infers that when the plaintiffs filed this action the state criminal cases were still pending against them.[5]

The plaintiffs assert that the *Younger* abstention doctrine is inapplicable, but they offer no citations or authorities to support their assertion. In fact, their entire argument comprises five brief sentences. The plaintiffs insist that they are not seeking to enjoin any state criminal proceedings but only to enjoin the defendants from enforcing Order 96 and DCR 3.311. The plaintiffs do not attempt to explain the intended or expected effect such an injunction would have on their pending criminal cases or on all pending criminal cases in the Third Judicial District. Finally, the plaintiffs maintain their constitutional challenges to the bail bond rules do not bear on their defenses to the pending criminal charges.

■ The court is not persuaded by the plaintiffs' efforts to evade *Younger's* reach. The Supreme Court has not restricted *Younger* to situations where the plaintiff seeks to enjoin the actual criminal prosecution. In *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the federal plaintiffs had disobeyed subpoenas to appear in supplemental proceedings brought by judgment creditors attempting to collect on their judgments. The plaintiffs brought a class action suit under 42 U.S.C. § 1983 seeking to enjoin the use of the statutory contempt procedures arguing the procedures were unconstitutional. In finding that the lower courts should have abstained, the Supreme Court held "that the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases." 430 U.S. at 334, 97 S.Ct. at 1216. The Court said the salient factor was not the label given the contempt proceedings

---

5. Assuming for the sake of argument that before this federal action was filed one or more of the state criminal cases was finally resolved and the time for filing an appeal had expired, *Younger* abstention would not apply as there would not be a pending state court proceeding. In that event, the plaintiffs would have to prove standing to bring their constitutional challenges to Order 96

and DCR 3.311. Because the plaintiffs have not argued the absence of a pending state court proceeding and the parties have neither briefed the issue of standing nor submitted the facts on which this issue could be decided, the court does not consider the plaintiffs' standing to be an issue in the case.

but the federal court's undue interference with a state court's legitimate activities and ability to carry out constitutional principles. 430 U.S. at 335–36, 97 S.Ct. at 1217–18.

In *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the state had sued the federal plaintiffs to recover welfare payments. As part of that state action, writs of attachment were issued against the federal plaintiffs pursuant to state law. The federal plaintiffs filed an action in federal court alleging the state law authorizing the writs of attachment was unconstitutional and seeking as relief, *inter alia,* an injunction against the use of this state law. The federal plaintiffs prevailed in district court and on appeal before the Supreme Court made an argument similar to that advanced by the plaintiffs in the instant case:

> Appellees argue that the injunction issued below in no way interfered with a pending state case. They point to the fact that only the attachment proceeding was interfered with—the underlying fraud action may continue unimpeded—and claim that the attachment proceeding is not a court proceeding within the doctrine of *Younger* and *Huffman* ....
>
> In this case the attachment was issued by a court clerk and is very much a part of the underlying action for fraud. Moreover, the attachment in this case contained a return date on which the parties were to appear in *court* and at which time the appellees would have had an opportunity to contest the validity of the attachment. Thus the attachment proceeding was "pending" *in the state courts* within the *Younger* and *Huffman* doctrine at the time of the federal suit.

431 U.S. at 446 n. 9, 97 S.Ct. at 1919 n. 9. The Supreme Court in *Trainor* held that the district court should have abstained. Suffice it to say, *Younger* abstention principles are not limited to injunctions against the entire state proceeding. *See Gentner,* 55 F.3d at 89; *Wallace v. Kern,* 520 F.2d 400, 405 (2nd Cir.1975), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976); *Nick v. Abrams,* 717 F.Supp. 1053, 1056 (S.D.N.Y. 1989).

The bail bond proceedings here are very much a part of the underlying criminal cases. *See Mudd v. Busse,* 437 F.Supp. at 511 ("bail setting process is an integral part of the criminal justice system in Indiana"). Bail bonds are to assure a criminal defendant's appearance throughout the criminal proceeding. For any number of reasons throughout the pendency of a criminal case, a state court may be called upon to reconsider or modify its bail bond determination. The court is satisfied that both the criminal cases and bail bond proceedings were pending at the time the plaintiffs filed their federal complaint. The plaintiffs' arguments to the contrary are without merit. The first requirement for *Younger* abstention is satisfied.

▮▮▮▮▮ The State of Kansas has an important interest in its bail bond rules and process. *See Wallace,* 520 F.2d at 405 (state has "a most profound interest" in bail application proceedings); *Epps v. Levine,* 457 F.Supp. 561, 568 (D.Md.1978) (state has "the strongest possible interest in ... its ability to assure a criminal defendant's appearance at trial"). Such an interest is more than enough to trigger the principles of comity and federalism. *See Wallace v. Kern,* 520 F.2d at 405; *Leach v. Santa Clara County Bd. of Supervisors,* No. C 94–20438–JW, 1995 WL 7935, at *4 (N.D.Cal. Jan. 4, 1995); *Dillman v. Peterson,* No. 93–1772–DLJ, 1993 WL 226104, at *5 (N.D.Cal. Jun. 21, 1993); *Mudd v. Busse,* 437 F.Supp. at 511; *cf. Hansel,* 56 F.3d at 393 (state's interest in lay judges for misdemeanor prosecutions); *Morano v. Dillon,* 746 F.2d 942, 945 (2nd Cir. 1984) (state's interest in district attorneys having the discretion to chose between preliminary hearings or grand jury for felony complaints); *Parker v. Turner,* 626 F.2d 1, 4 (6th Cir.1980) (state's interest in civil contempt proceedings in domestic relations support cases). The State's interest is not any less simply because a defect in setting the bail bond is not a defense to the actual criminal prosecution. "Indeed, given the close relationship of the bail system to the criminal prosecution itself, the State's interest in the practices and procedures of that system is equal to if not greater than the processes in *Juidice* and *Hernandez.*"

*Mudd v. Busse,* 437 F.Supp. at 511 (citation omitted). If a federal court were to intervene, this would cast a critical shadow over the state judiciary's ability to deal fully and fairly with an accused's right to bail. The second requirement for *Younger* abstention is satisfied.

■ The final requirement for *Younger* abstention is "an opportunity [for the plaintiffs] to present their federal constitutional claims in the ongoing state court proceedings. No more is required to invoke *Younger* abstention." *Juidice v. Vail,* 430 U.S. at 337, 97 S.Ct. at 1218 (footnote omitted). "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel,* 56 F.3d at 394 (citations omitted). The federal plaintiffs here have the opportunity to present their constitutional claims in the original state district court proceeding, in a separate habeas corpus proceeding in state district court, on direct appeal of the habeas corpus proceeding, and possibly even on direct appeal of any criminal conviction. *See State v. Ruebke,* 240 Kan. 493, 497–98, 731 P.2d 842, *cert. denied,* 483 U.S. 1024, 107 S.Ct. 3272, 97 L.Ed.2d 770 (1987); *State v. Foy,* 224 Kan. 558, 562, 582 P.2d 281 (1978); *see, e.g., Pauley v. Gross,* 1 Kan.App.2d 736, 574 P.2d 234 (1977), *rev. denied,* (1978). These state remedies are adequate for *Younger* purposes. *See Wallace,* 520 F.2d at 407; *Mudd,* 437 F.Supp. at 514–15. The third and final requirement for *Younger* abstention is also satisfied.

■ The *Younger* abstention doctrine is not without its own exceptions. "A federal plaintiff may overcome the presumption of abstention 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown....'" *Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 87 (5th Cir.1992) (quoting *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971)). The irreparable injury must be " 'both great and immediate.' " *Younger,* 401 U.S. at 46,

91 S.Ct. at 751 (quoting *Fenner v. Boykin,* 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). Undoubtedly, the exceptions to the *Younger* abstention doctrine are "narrow." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975); *see Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) (*Younger* exceptions apply "in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury."); *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975) ("Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it...."). The plaintiffs do not argue any exception to *Younger* abstention.

■ Considering the equitable nature of the plaintiffs' claims, the pending criminal proceedings against them, and the state procedural avenues available to them, the plaintiffs have not demonstrated the extraordinary circumstances necessary for federal equitable intervention. Consequently, *Younger* requires the dismissal of the plaintiffs' federal action. *See Temple of Lost Sheep Inc. v. Abrams,* 930 F.2d 178, 182–83 (2nd Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (Dk. 11) is granted, as the court lacks subject matter jurisdiction over some of the plaintiffs' claims and abstains under the *Younger* doctrine to entertain the plaintiffs' other claims.

## MEMORANDUM AND ORDER ON MOTION FOR EXTENSION OF TIME

The case comes before the court on the plaintiffs' motion for extension of time to file a motion to reconsider. (Dk. 23). The plaintiffs seek an additional fourteen days to file their motion to have the court reconsider its order that dismissed this case in part on the basis of the *Rooker–Feldman* doctrine and in sum on the grounds of *Younger* abstention. The clerk entered judgment in the case on February 2, 1996.

■ The nomenclature of the Federal Rules of Civil Procedure does not include a "motion to reconsider." Federal courts view motions to reconsider as either motions to alter or amend under Rule 59(e) or motions for relief under Rule 60(b). *Elsken v. Network Multi-Family Sec. Corp.,* 49 F.3d 1470, 1476 (10th Cir.1995). If the motion is served no later than ten days after entry of judgment, it is treated under Rule 59(e); otherwise, the motion is treated under Rule 60(b).[1] *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

■ Rule 59(e) and Rule 60(b) "are distinct; they serve different purposes and produce different consequences." *Van Skiver,* 952 F.2d at 1243. For purposes of this case, one significant distinction is the time period for bringing the different motions. From the entry of judgment, a movant has ten days to serve a Rule 59(e) motion, one year to make a motion for reasons (1), (2) and (3) of Rule 60(b), and a reasonable time to bring a motion for the other reasons under Rule 60(b). Fed.R.Civ.P. 59(b), 60(b). However, if the movant serves a Rule 60(b) motion within the ten-day rule specified in Rule 59(b), then the Rule 60(b) motion will have the same effect as a Rule 59 motion in delaying the start of the appeal period until an order is entered denying the motion. Fed.R.App.P. 4(a)(4).

■ Common to both motions is that Rule 6(b) precludes a court from extending the time for bringing such motions. Consequently, the court cannot grant the plaintiffs' motion for extension to bring a Rule 59(e) motion or to bring a Rule 60(b) motion. Of course, the plaintiffs' time for bringing a Rule 60(b) motion does not expire on February 12, 1996, but a motion served after that date will not toll the time for filing an appeal.

IT IS THEREFORE ORDERED that the plaintiffs' motion for extension of time to file a motion to reconsider (Dk. 23) is denied.

---

1. In their motion for extension of time, the plaintiffs argue the time for bringing their motion to reconsider expires on February 12, 1996. Presumably then, the plaintiffs intend to bring a Rule 59(e) motion.