No. 78,509

DEWEY R. SMITH, *et al., Appellants,* v. STATE OF KANSAS, *et al.,*
*Appellees.*
(955 P.2d 1293)

Opin-
ion filed March 13, 1998.

*Michael F. Brunton,* of Topeka, argued the cause and was on the brief for
appellants.

*Eliehue Brunson,* assistant attorney general, argued the cause, and *Kevin D.
Case,* assistant attorney general, and *Carla J. Stovall,* attorney general, were with
him on the brief for appellees.

The opinion of the court delivered by

SIX, J.: This is a 42 U.S.C. § 1983 (1994) and Kansas Tort Claims
Act (KTCA), K.S.A. 75-6101 *et seq.,* case. Plaintiffs are eight per-
sons who, following arrest, experienced pretrial release procedures
in the Third Judicial District (Shawnee County). Plaintiffs chal-
lenge the procedures. Defendants are the State, the Third Judicial
District, and the 14 Third Judicial District judges as individuals.

The district court granted defendants' motion to dismiss. See
K.S.A. 60-212(b)(1) and (6). Plaintiffs object specifically to the
"Own Recognizance-Cash Deposit Bond" (ORCD bond) author-
ized by Third Judicial District Court Rule (DCR) 3.311. DCR
3.311 was adopted under Supreme Court Administrative Order
No. 96.

Plaintiffs' petition asserts constitutional violations and seeks class certification, injunctive relief, and attorney fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 (1994). The certification references a class of persons "arrested in the Third Judicial District since 1985 who have been required to post bail to be eligible for pre-trial release." Plaintiffs estimated that the class numbered 73,000 as of July 24, 1996, the date the petition was filed. The class grows by an average of 20 persons per day. Damages are sought against the State in the KTCA claim, for false imprisonment and conversion. Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our motion).

We consider two questions: Did the district court err in dismissing (a) the 42 U.S.C. § 1983 claims and (b) the KTCA damage claims?

The answer to both is "no."

We affirm the district court.

## FACTS

### Statutory Pretrial Release and the ORCD Bond

Our Order No. 96 (issued January 17, 1995) gives all judicial districts discretion to adopt a pretrial release procedure similar to DCR 3.311. Paragraph 2 of Order No. 96 clearly says that any local rule dealing with pretrial release is "[i]n addition to the current statutory pretrial release system."

The legislature has addressed pretrial release procedures. Under K.S.A. 22-2802(1), persons charged with crimes "shall . . . be ordered released pending . . . trial upon the execution of an appearance bond in an amount specified by the magistrate and sufficient to assure the appearance of such person before the magistrate when ordered and to assure the public safety." Under paragraphs (3) and (4), 22-2802 contemplates three types of appearance bonds: own recognizance, surety, or a cash deposit instead of the bond. The bond is to have sufficient sureties, unless the magistrate decides that requiring sureties is not necessary to assure appearance. In lieu of a surety bond, cash may be deposited for the bond.

Under DCR 3.311, besides the statutory bonds described in 22-2802, the ORCD bond, a hybrid type of bond, is created. Paragraph 16 of DCR 3.311 provides that ORCD bond participation is on a voluntary basis and the statutory methods of providing bail are not to be limited or restricted. With the ORCD bond, the judge sets a bond amount (for example, $1,000). The accused is required to deposit 10 percent of that amount with the clerk of the district court ($100). The accused receives 90% of that deposit back upon completion of all obligations to the court—unless the accused has other financial obligations such as back child support or outstanding fines. If there are outstanding financial obligations, the $90 will be applied to those. Ten percent of the deposit ($10 in the example) will be kept as an administrative fee. Another key provision is Paragraph 15. This paragraph provides that when the court has specified the bond as cash or ORCD but the accused wants a professional surety bond, "the deputy clerk shall contact the judge authorizing the bond for modification of the bond."

## Plaintiffs' Claims

The first amended petition sets forth the factual allegations surrounding the arrest, bail bonds, and release of each plaintiff. The case numbers of the individual criminal cases of plaintiffs are alleged, but the judge handling the particular case is not identified. In seven of the plaintiffs' bond situations, the district court allegedly set cash or ORCD bonds for varying amounts, although the plaintiffs had requested surety bonds. Requests for surety bonds were denied, either by the judge or because the deputy clerk allegedly refused to contact the judge to make the modification. In one situation, the plaintiff had requested a cash bond, but a surety or ORCD bond was specified. One of the plaintiffs (Hendricks) was released only after the district attorney declined to prosecute. Plaintiffs also complain that DCR 3.311 allows the district court to apply an accused's cash deposit to other obligations unrelated to the accused's criminal case. They also contend that an unauthorized administrative fee is charged with ORCD bonds. Plaintiffs assert that the practices allowed under DCR 3.311 and as applied by the defendant judges are not authorized by K.S.A. 22-2802.

The petition alleges that the defendants, acting under color of state law, violated plaintiffs' federal civil rights of due process, equal protection, and freedom from excessive bail, and under 42 U.S.C. § 1983 through the pretrial release procedure. Plaintiffs also claim defendants have violated § 9 of the Kansas Constitution Bill of Rights. The petition sets out a list of specific defects in the pretrial release procedure. Plaintiffs claim their releases were delayed and they were unlawfully forced to forfeit money deposited with the court during the bonding-out process. These allegations are advanced in support of KTCA claims for false imprisonment and conversion. Plaintiffs seek prospective injunctive relief prohibiting enforcement of the pretrial release procedures, costs and attorneys fees under 42 U.S.C. § 1988, monetary damages for the class, and restitution.

The petition is not separated into different counts. All claims are alleged together against all defendants. The petition does not identify the current status of plaintiffs' criminal cases. It also does not plead that any plaintiffs sought relief regarding their bonds in their criminal cases, either through appeal or by writ of habeas corpus.

Defendants jointly moved to dismiss the petition under K.S.A. 60-212(b)(1) (subject matter jurisdiction) and (6) (failure to state a claim). The parties fully briefed the issues, which were heard before the Honorable Stephen D. Hill, who was assigned from another judicial district.

Plaintiffs presented several evidentiary witnesses, including court services personnel, a criminal defense attorney, a legal assistant from the public defender's office, jail personnel, and three of the plaintiffs. The testimony addressed the operation of the pretrial release program as applied to the three plaintiffs who testified.

### The District Court's Ruling

Judge Hill decided the Third Judicial District was not a legal entity and dismissed all claims against the district, under K.S.A. 60-212(b)(1). All 42 U.S.C. § 1983 claims against the State were dismissed for failure to state a claim, K.S.A. 60-212(b)(6) (The State was not a "person" against whom relief could be sought, relying on *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64,

105 L. Ed. 2d 45, 109 S. Ct. 2304 [1989].). On appeal, plaintiffs have not briefed the 42 U.S.C. § 1983 claims against either the judicial district or the State. Plaintiffs' counsel acknowledged at oral argument that these claims were abandoned.

In determining that the district court lacked subject matter jurisdiction to grant 42 U.S.C. § 1983 equitable relief against the judges, Judge Hill relied on the following two reasons:

(1) The noninterference doctrine, as stated in *Schaeffer v. Schaeffer*, 175 Kan. 629, 633, 266 P.2d 282 (1954), applied:

"The general rule is that when a court of competent jurisdiction acquires jurisdiction of the subject matter and of the parties, its jurisdiction continues as to all matters therein involved until the issues are finally disposed of, and no court of co-ordinate jurisdiction should interfere with its action."

(2) Plaintiffs had other and more appropriate forums in which to seek their remedies, *i.e.*, appellate review of their criminal cases or habeas corpus relief. Judge Hill also referred to *Mounkes v. Conklin*, 922 F. Supp. 1501 (D. Kan. 1996). In *Mounkes*, apparently filed by at least one or more of the plaintiffs here, similar 42 U.S.C. § 1983 claims were brought against the defendant judges. (The members of this court were also defendants in *Mounkes*.) The *Mounkes* court dismissed the complaint, based on the *Rooker-Feldman* doctrine as to each separate bail bond decision. 922 F. Supp. at 1510; see *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 68 L. Ed. 362, 44 S. Ct. 149 (1923). The remaining allegations involving general constitutional attacks on Order No. 96 and DCR 3.311 were dismissed under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 56, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971).

Judge Hill denied a temporary injunction here, saying: "The intended and unintended results of granting a temporary injunction in this case amount to judicial interference on a massive scale." Plaintiffs did not brief the temporary injunction issue, and it is abandoned. See *Pope v. Ransdell*, 251 Kan. 112, 119, 833 P.2d 965 (1992).

Judge Hill dismissed the KTCA claims, concluding that the actions complained of were discretionary judicial functions and that

K.S.A. 75-6104(e) (the discretionary function exception) applied. (We note the citation for the judicial function exception is K.S.A. 75-6104[b].)

## DISCUSSION

Our initial inquiry concerns the district court's dismissal of the 42 U.S.C. § 1983 claims for injunctive relief and leads us to examine subject matter jurisdiction. See K.S.A. 60-212(b)(1).

In reviewing defendants' successful motion to dismiss, we are required to assume that the facts alleged by the plaintiffs are true. We must also decide whether the pleaded facts and inferences state a claim, not only on the theories that were espoused by the plaintiffs, but also on any possible theory we can divine. *Kansans for Fair Taxation, Inc. v. Miller*, 20 Kan. App. 2d 470, Syl. ¶ 1, 889 P.2d 154, *rev. denied* 257 Kan. 1092 (1995). We note that plaintiffs do not set out the standard of review as required by our Rule 6.02(e) (1997 Kan. Ct. R. Annot. 33).

### Noninterference or Comity Doctrine

Plaintiffs argue that the *Schaeffer* noninterference doctrine, 175 Kan. at 633, relied on by the district court, is not applicable.

*Schaeffer* involved competing divorce actions, each filed in different counties a few days apart. The comity doctrine has been applied numerous times in the context of competing domestic relations cases. See, *e.g., Perrenoud v. Perrenoud,* 206 Kan. 559, 573, 480 P.2d 749 (1971); *Boyce v. Boyce,* 13 Kan. App. 2d 585, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989) (common-law action for child support dismissed on comity principles, in view of prior divorce action in Nebraska).

We have an interesting question here: Can a district judge prospectively enjoin the other judges in the district from enforcing, in their criminal cases, a local judicial district rule which is alleged to violate federal civil rights?

We characterize Judge Hill's position as that of an appellate court reviewing decisions made by the Shawnee County district judges. Would not Judge Hill be required to review the eight individual case files to determine how the bail bond procedure was

applied in each case? Would the judges be deposed by the Plaintiffs? Would not a transcript of the proceedings in each case be required for a realistic review? We believe there are valid reasons why subject matter jurisdiction does not exist here. However, the comity doctrine does not seem well suited to apply in the context of this lawsuit. The strongest reason against its application here is the fact that 42 U.S.C. § 1983 claims are involved. Concern for abridgment of a federal civil rights claim before it is even considered on the merits would seem to override the deferential comity doctrine. We move on to our reasons for affirming the district court's denial of injunctive relief.

The Kansas Court of Appeals has jurisdiction "to correct, modify, vacate or reverse *any act, order or judgment of a district court* to assure that any such act, order or judgment is just, legal and free of abuse." (Emphasis added.) K.S.A. 60-2101. There exists no statutory authority for a district judge to sit in judgment of a coequal district court.

Plaintiffs cite *Pulliam v. Allen*, 466 U.S. 522, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984), as directly on point. We disagree. In *Pulliam*, a magistrate judge imposed bail on two persons arrested for nonjailable misdemeanor offenses (use of abusive and insulting language and drunk in public). Both were incarcerated for a number of days for failure to make bond. They filed § 1983 actions in federal district court against the magistrate. The requested relief was a prospective injunction against the magistrate's practice of imposing bail on persons arrested for nonjailable offenses. The *Pulliam* plaintiffs obtained the injunction along with costs and attorney fees.

Concluding that judicial immunity did not bar prospective injunctive relief, the *Pulliam* Court said:

"In so concluding, we express no opinion as to the propriety of the injunctive relief awarded in this case. Petitioner did not appeal the award of injunctive relief against her. *The Court of Appeals therefore had no opportunity to consider whether respondents had an adequate remedy at law, rendering equitable relief inappropriate, or whether the order itself should have been more narrowly tailored.* On the record before us and without the benefit of the Court of Appeals' assessment, we are unwilling to speculate about these possibilities." 466 U.S. at 542-43. (Emphasis added.)

*Pulliam* is not persuasive authority here for either equity jurisdiction or plaintiffs' claims for injunctive relief.

Judge Hill did not rely solely upon the noninterference doctrine in dismissing plaintiffs' § 1983 claims. He also held that plaintiffs had other legal remedies available, *i.e.*, appellate review of their criminal cases or habeas corpus relief. We emphasize the cautionary teaching in *Pulliam:*

> "For the most part, injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards. The limitations already imposed by the requirements for obtaining equitable relief against any defendant—a showing of an inadequate remedy at law and of a serious risk of irreparable harm [citation omitted]—severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." 466 U.S. at 537-38.

"Injunction is an equitable remedy and its grant or denial in each case is governed by the principles of equity." *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, Syl. ¶ 1, 689 P.2d 860 (1984).

"In considering the right to injunctive relief in a suit under 42 USC § 1983, the court applies the ordinary principles of equity, determining whether the plaintiff has shown irreparable damage and the absence of a plain, adequate, and complete remedy at law." 15 Am. Jur. 2d Civil Rights § 275 (citing *Abernathy v. Patterson*, 295 F.2d 452, 456 [5th Cir. 1961], *cert. denied* 368 U.S. 986 [1962]) (dismissal of suit for injunctive relief under § 1983 and other federal statutes affirmed; plaintiffs failed to show adequate grounds for injunctive relief).

What legal remedies were available to plaintiffs? In *State v. Ruebke*, 240 Kan. 493, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), we observed that appellate review is available to contest bail. Ruebke was convicted of three counts of first-degree murder and three counts of aggravated kidnapping. Ruebke asserted that the judge's failure to reduce his bail from $100,000 impaired his defense. He had not filed a writ of habeas corpus and was later released on bail before trial. Deciding that bail was not excessive, we said: "When a defendant alleges on appeal error in the fixing of bail, but fails to file a writ of habeas corpus and does not claim his defense was hampered by his custody status, the matter of pre-

trial release is moot." 240 Kan. at 498; see *State v. Foy*, 224 Kan. 558, 562, 582 P.2d 281 (1978); *State v. Dunnan*, 223 Kan. 428, 430, 573 P.2d 1068 (1978) (excessive bail claims denied on appeal in both cases; no writs of habeas corpus filed). A criminal defendant must promptly pursue habeas corpus remedies in order to preserve for review on appeal questions concerning bail.

The writ of habeas corpus provides a mechanism under which a criminal defendant can seek relief from confinement under an erroneous bond, or even relief while released on bail. See K.S.A. 1997 Supp. 60-1501, the statutory habeas corpus proceeding; see also *In re Habeas Corpus Petition of Mason*, 245 Kan. 111, 115, 775 P.2d 179 (1989) ("A defendant who has been released on bond nevertheless remains in custody for purposes of a writ of habeas corpus"; writ of habeas corpus raising double jeopardy issue following mistrial granted and defendant discharged).

We acknowledge that neither appellate review nor a writ of habeas corpus would provide the opportunity to seek prospective injunctive relief against enforcement of the DCR 3.311 pretrial release program sought by plaintiffs in their § 1983 claims. Habeas corpus provides only the opportunity to correct bail errors in a specific criminal case, if not already moot. The plaintiffs are no longer confined and their criminal cases appear to be over at this point (although the petition does not show the current status). The urgency of prospective injunctive relief is questionable.

Typically, a defendant in pretrial confinement with a bond imposed has two immediate options: first, file a motion to reduce or otherwise modify the bond; second, file a writ of habeas corpus. See *Dunnan*, 223 Kan. at 430 (murder conviction reversed on other grounds), in which Dunnan contended on appeal that his $250,000 bail was excessive, violating the Eighth Amendment to the United States Constitution, § 9 of the Kansas Constitution Bill of Rights, and K.S.A. 22-2801. In deciding that the magistrate had not abused his discretion in setting bail, we observed:

"The bond fixed was indeed high, but the offense was most serious. We find no written motion to reduce bond, and if an oral motion was made, we find no record of it. Also, we find no indication that the defendant filed an application for writ of habeas corpus, an appropriate, efficacious, and always available method for

seeking release from unlawful custody. [Citation omitted.] We hasten to say that such an application should not be made until a motion to reduce bond has been heard and ruled upon by the trial court." 223 Kan. at 430.

Defendants rely on *Mounkes.* Plaintiffs' counsel represented at oral argument that Mounkes is the only plaintiff here who was also a plaintiff in the federal lawsuit. However the record reflects the State's observation that Dozier and Haynes, plaintiffs here, were also plaintiffs in *Mounkes.* In *Mounkes*, defendants sought dismissal of the complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The description in the opinion of the allegations and relief sought is similar to the § 1983 claims asserted here. In reviewing the complaint *Mounkes* observed:

"What the plaintiffs do not allege is also important to note. They do not mention whether they ever sought or requested modification of the bonds set. Nor do they say whether they ever challenged the constitutionality of the administrative order and local rule in the original proceedings or in a separate habeas corpus action. Finally, the plaintiffs do not allege the particular status or posture of the different criminal cases." 922 F. Supp. at 1507.

The *Mounkes* observations apply here, although the plaintiffs claim they made bond modification requests in their criminal cases, which were denied. The petition here alleges that plaintiffs' Smith and Dixon requested bond modification. However, there are no allegations that any plaintiff initiated habeas corpus proceedings or ever challenged their bonds as illegal or unconstitutional in their criminal cases. At oral argument in the district court, plaintiffs' counsel advised Judge Hill of the current disposition (as of November 14, 1996) of a few of the cases. None were on appeal. Smith was on probation and Dixon had entered a plea. None of the plaintiffs were incarcerated.

Judge Hill did not list failure to show irreparable harm as a reason why equity jurisdiction did not exist. However, if none of the plaintiffs were incarcerated, the obvious question arises, where was the irreparable harm? If the only remaining issues involve damages, then equitable relief was not appropriate.

Generally, federal courts are not to enjoin pending state court criminal proceedings, except in narrow circumstances. *Mounkes,* 922 F. Supp. at 1511. Although *Mounkes* keyed on federal juris-

dictional and abstention grounds, the question of whether plaintiffs' § 1983 claims were appropriate for equitable relief was addressed:

"Considering the equitable nature of the plaintiffs' claims, the pending criminal proceedings against them, and the state procedural avenues available to them, the plaintiffs have not demonstrated the extraordinary circumstances necessary for federal equitable intervention." 922 F. Supp. at 1513.

Judge Hill voiced concern that granting the injunctive relief requested would put him in the position of supervising all pretrial release procedures in the district court of Shawnee County and amount to "judicial interference on a massive scale." We agree. This concern also weighs heavily against jurisdiction for equitable relief.

We affirm the district court's dismissal of plaintiffs' 42 U.S.C. § 1983 claims for injunctive relief. Plaintiffs have failed to allege grounds for equitable jurisdiction. They have failed to show either lack of adequate legal remedies or irreparable harm.

## The KTCA

Judge Hill's order dismissed all damage claims against the judges under K.S.A. 60-212(b)(1) and (6). The plaintiffs only sought damages against the State for their KTCA claims. Judge Hill's dismissal has the effect of disposing of the KTCA claims against the State. None were pending against the judges individually.

The KTCA makes liability the rule and immunity the exception. The burden is on the State to establish its entitlement to any of the exceptions set forth in K.S.A. 75-6104. If the State cannot meet this burden, then the general rule of liability set forth in K.S.A. 75-6103 governs. *C.J.W. v. State*, 253 Kan. 1, 13, 853 P.2d 4 (1993).

K.S.A. 75-6103 provides:

"(a) Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The facts, developed from the allegations in plaintiffs' petition, form an awkward setting for a KTCA claim. We cannot visualize a

"private person" taking the bench in a criminal court and exercising discretion in setting pretrial release bonds for an accused.

Judge Hill concluded that discretionary functions are excluded under the KTCA. Relying on 75-6104(e) and citing *Beck v. Kansas Adult Authority*, 241 Kan. 13, 735 P.2d 222 (1987), Judge Hill observed that "all of the actions of the judges, complained about by the plaintiffs, that is, the setting of bond, modifying or refusing to modify orders, making rules, are all *judicial functions* left to the discretion of the judge who has competent jurisdiction." (Emphasis added.) We said in *Beck*, in discussing a judge's discretion to ignore or deny parole or probation: "We do not believe that the legislature, in enacting the Kansas Tort Claims Act, intended to subject [a] . . . judge, to litigation in order to determine whether the . . . judge turned every tap and jumped through every hoop in arriving at a decision . . . ." 241 Kan. at 36. K.S.A. 75-6104(b) and (e) provide:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

(b) judicial function;

. . . .

(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

We reviewed the 75-6104(b) "judicial function" exception in *Cook v. City of Topeka*, 232 Kan. 334, 337, 654 P.2d 953 (1982). We said: "Where 'judicial function' is being distinguished from 'ministerial act' the emphasis shifts to discretionary acts versus performance of some duty involving no discretion." A municipal court clerk's failure to recall a bench warrant was held to be ministerial and nondiscretionary, not a "judicial function." In *Cook*, we defined judicial function as involving "the exercise of judgment, discretion, discernment, or discrimination." 232 Kan. at 337. The acts complained of here were performed by judges carrying out their judicial responsibilities and thus are exempt under 75-6104(b). See also *Akbarnia v. Deming*, 845 F. Supp. 788, 790 (D. Kan. 1994),

*aff'd* 49 F.3d 1482 (10th Cir. 1995) (judicial function exception applied to immunize psychologists who performed court-ordered evaluations in connection with divorce proceedings, against professional negligence claims of mother and others).

Plaintiffs argue that the discretionary function exception should not apply because the actions of the deputy court clerks in routinely denying bail and pretrial release were ministerial in nature, citing *Cook*, 232 Kan. at 337. However, plaintiffs named the judges as defendants, not the deputy court clerks. The petition fails to identify the particular judge taking action concerning the pretrial release of any of the eight plaintiffs. Only eight district court orders are at issue. All 14 judges are named as defendants without any clue as to which judges entered the objectionable orders.

Plaintiffs argue that § 9 of the Kansas Constitution Bill of Rights and K.S.A. 22-2802(1) provide mandatory guidelines that must be followed by all judges with respect to pretrial release of accused persons.

Section 9 of the Kansas Constitution Bill of Rights provides: "All persons shall be bailable by sufficient sureties except for capital offenses, where proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." The language "shall be bailable by sufficient sureties" leaves open to discretion at least two key determinations: What amount of bail is sufficient, and what is a sufficient surety?

Plaintiffs agree that judges have discretion in fixing the amount of bail. They also agree that judges have total discretion to impose conditions reasonably necessary to assure appearance and provide for public safety, as set forth in K.S.A. 22-2802(1). Plaintiffs contend, however, that judges do not have discretion to deny pretrial release and admission to bail by not permitting either a surety bond or cash in lieu of bond when requested. We observe that in none of the cases described in the petition were Plaintiffs denied admission to bail. Plaintiffs' complaints are that the defendant judges allegedly denied them the specific type of bail they requested (either surety or cash), forcing them to participate in the ORCD bond program and delaying their releases. The gist of plaintiffs' com-

plaint lies in the manner in which the defendant judges complied with their responsibility to set bail.

Plaintiffs' KTCA claims are conclusory. Most likely, many of the 14 judges named as defendants had no involvement in plaintiffs' eight criminal cases. When plaintiffs allege they requested surety bonds or that they could have obtained surety bonds, there are no allegations to show that the sureties proposed to be used were "sufficient," within the meaning of K.S.A. 22-2802(3). If plaintiffs were denied surety bonds because the proposed sureties were not, in the judge's view, sufficient, then the judge would have been acting within statutorily provided discretion in denying the requests for surety bonds. In only one of the criminal cases, that of plaintiff Cassie Benoit, was a surety bond specified and a request to post a cash deposit for the same amount allegedly denied. However, the deputy clerk of the court allegedly denied the request, not the judge. The petition goes on to allege that 2 days after the request was denied, Benoit's bond was changed to an own recognizance bond, and she was released. Evidently, the judge must have granted her request to have her bond changed from surety to own recognizance. She was not forced to obtain an ORCD bond. The statutes do not place a time limit on when an incarcerated accused's requests for bond modification must be heard.

K.S.A. 22-2802(7) provides for bond condition modification requests. Such requests are to be heard "without unnecessary delay." Instantaneous action on such requests is not mandated. Presumably, the requests will be acted upon as soon as possible.

We have referenced the judicial function exception, 75-6104(b). The term "judicial function" was used by Judge Hill in his dismissal order. In a pre-KTCA case, the Court of Appeals stated the common-law doctrine of judicial immunity as follows: "[J]udges are immune for damages for acts committed within their judicial jurisdiction." *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 477, 620 P.2d 837 (1980) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 87 S. Ct. 1213 [1967]; *Stump v. Sparkman*, 435 U.S. 349, 355-56, 55 L. Ed. 2d 331, 98 S. Ct. 1099 [1978]).

We reason that the specific focus of the district court on "judicial function" guides us to the application of K.S.A. 75-6104(b) rather

than 75-6104(e) in resolving this issue. As the district court observed, the acts complained of "are all judicial functions left to the discretion of the judge who has competent jurisdiction." We have said that a district court's reason for its decision is immaterial if the ruling was correct for any reason. *Dickerson v. Kansas Dept. of Revenue,* 253 Kan. 843, Syl. ¶ 3, 863 P.2d 364 (1993).

The acts of the defendant judges forming the basis for plaintiffs' complaints are judicial functions. The State is exempt from liability under K.S.A. 75-6104(b).

In concluding, we emphasize the language used in paragraph 16 of the example of a pretrial release procedure that was attached to our Administrative Order No. 96. Paragraph 16 states:

"This rule shall not limit or restrict the right of any person to seek or obtain pretrial release under other statutory methods of admitting accused persons to bail or the authority of a judge of the district court to determine bail. *The participation of an accused person in this program shall be on a voluntary basis.*" (Emphasis added.)

Paragraph 16 means just what it says. Voluntary participation is a key element in Order No. 96. Paragraph 16 of the Third Judicial District's Rule 3.311 is identical.

Affirmed.