NOT DESIGNATED FOR PUBLICATION

No. 126,212

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WESLEY G. COPELAND SR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Chautauqua District Court; JEFFREY GETTLER, judge. Submitted without oral argument. Opinion filed February 14, 2025. Affirmed.

*David M. Braun*, of Braun Law, LLC, of Topeka, for appellant, and *Wesley G. Copeland Sr.*, appellant pro se.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and CLINE, JJ.

PER CURIAM: Wesley G. Copeland Sr. has appealed the Chautauqua County District Court's denial of his request for habeas corpus relief from multiple felony convictions in two cases and a pair of misdemeanor convictions in a third case. Between his lawyer's appellate brief and Copeland's own supplemental brief, we have been presented with a raft of reasons the district court erred. We find none of them persuasive and, therefore, affirm the district court's ruling.

1

CASE BACKGROUND

In 2012, the State filed two criminal cases against Copeland. In the first, he was charged with aggravated assault and domestic battery for an incident in which he allegedly hit and then pointed a handgun at Dana Clanton, his domestic partner. In the other, he was charged with eight drug-related counts and five counts of criminal possession of a weapon. The State later dismissed one of the weapons charges, and the cases were consolidated for trial in 2014. The jury found Copeland not guilty of domestic battery and convicted him of everything else. The district court imposed a controlling sentence of 162 months in prison with postrelease supervision for 36 months. Copeland appealed, and we affirmed the convictions and sentences. *State v. Copeland*, No. 112,755, 2018 WL 3602970, at *1 (Kan. App. 2018) (unpublished opinion).

Also in 2014, Copeland pleaded no contest to two misdemeanor charges of violating a protection from abuse order. The district court ordered Copeland to serve 12 months in jail on each misdemeanor to be served concurrently with the controlling sentence in the 2012 cases. Copeland did not appeal those convictions or sentences.

In October 2020, Copeland drafted and filed a lengthy motion for relief from all of the convictions under K.S.A. 60-1507, governing habeas corpus proceedings. The district court appointed a lawyer to represent Copeland. The lawyer filed an amended 60-1507 motion. The State filed a motion asking the district court to deny the motion; Copeland's lawyer filed a response. Without hearing evidence, the district court entered an order denying the 60-1507 motion. Copeland appealed, and that ruling is what we now have in front of us. As we have indicated, the district court appointed a new lawyer to handle the appeal. In addition to the lawyer's brief, we have received and considered a supplemental brief that Copeland personally prepared.

Where, as here, the district court has denied a 60-1507 motion based on the content of the motion itself, any related written submissions of the parties, and the record in the underlying criminal cases, we exercise unlimited review of that ruling. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). We may consider those materials just as well as the district court can. The determination does not involve evaluating new evidence, such as witness testimony, presented at a hearing on the motion. If the written materials conclusively show Copeland is entitled to no relief, then the district court properly denied the motion. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

On appeal, Copeland has raised a slew of issues. We first outline the relevant legal principles governing habeas corpus attacks on criminal convictions. After considering and disposing of Copeland's challenge to his misdemeanors, we group his remaining points as arguments going to either the sufficiency of his legal representation apart from the jury trial itself or to his representation during the trial. To some extent, the arguments Copeland's lawyer and Copeland personally have presented in this appeal overlap. We haven't distinguished between them in those instances.

*Legal Principles*

To prevail on his 60-1507 motion, Copeland must show both that his legal representation in the direct criminal cases "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in those cases would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021); *Sola-Morales*, 300 Kan. at 882; see

*Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). Reasonable representation demands that degree of "skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. *Strickland*, 466 U.S. at 694. Copeland must establish both constitutionally inadequate representation and sufficient prejudice attributable to that representation materially calling into question the resulting convictions.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the legal representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when they investigate the client's circumstances and then make a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer has made reasoned strategic decisions bears on the competence component of the *Strickland* test.

Regardless of the inadequacy of the legal representation, a 60-1507 motion fails if the movant cannot establish substantial prejudice. So, the district court properly may deny a motion that falters on the prejudice component of the *Strickland* test without assessing the sufficiency of the representation. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *Robinson v. State*, No. 122,089, 2022 WL 4112681, at *2 (Kan. App. 2022) (unpublished opinion). In other words, even assuming a criminal defendant's legal representation fell below the Sixth Amendment standard, they are not entitled to habeas corpus relief if the result would have been no different with

4

competent counsel. We may affirm the denial of relief in the absence of demonstrable prejudice.

*Misdemeanor Convictions*

We first consider Copeland's 60-1507 challenge to the two misdemeanor convictions for violating the protection from abuse order. Because Copeland did not appeal those convictions, they became final 14 days after he was sentenced in September 2014. K.S.A. 22-3608(c) (time to appeal). He had one year from the expiration of that appeal time to file his 60-1507 motion. K.S.A. 2023 Supp. 60-1507(f)(1)(A). He missed the mark by about six years.

But K.S.A. 2023 Supp. 60-1507(f)(2)(A) includes an exception to the one-year deadline for "manifest injustice" defined as either a showing of actual innocence or a compelling reason for failing to timely file. Copeland doesn't claim innocence. Rather, he contends his lack of legal training confounded his efforts to timely file a 60-1507 motion on the misdemeanor convictions distinct from the felony convictions in the other criminal cases. We have regularly rejected this sort of claimed lack of competence as manifest injustice permitting an untimely 60-1507 motion. See *Klein v. State*, No. 122,543, 2021 WL 1323793, at *3 (Kan. App. 2021) (unpublished opinion); *Loggins v. State*, No. 120,703, 2020 WL 398637, at *2 (Kan. App. 2020) (unpublished opinion). That's the end of the matter for this part of Copeland's claim. We do not address the substantive arguments he makes about those convictions.

*Other Claims for Relief*

Copeland's motion is otherwise timely under the prison mailbox rule. See *Wahl v. State*, 301 Kan. 610, 615, 344 P.3d 385 (2015). So we now turn to the multiple attacks Copeland directs at the jury verdicts and resulting convictions in the two cases that went

5

to trial. For the most part, the arguments are tersely presented. We take them up serially, adding factual and procedural background as we go.

*Claims of Deficient Representation Apart from Jury Trial*

• Copeland contends Michael C. Brown, the lawyer representing him leading up to and through the jury trial and sentencing, labored under a conflict of interest because of how he was paid. Copeland and Clanton retained Brown and signed a contract with him calling for a $7,000 retainer and paying him $200 an hour to represent Copeland. A copy of the contract is in the record. At some point, Clanton indicated the money to hire Brown actually came from Copeland's father. But that seems largely beside the point, given the contractual relationship between Clanton and Brown. She was more than a mere conduit for transferring money to Brown from another known party.

The circumstances created a potential conflict of interest for Brown because Clanton was the putative victim in some of the charges against Copeland and, therefore, almost certainly would be a State's witness at trial. And she was. So Brown had to cross-examine the party who had retained him. Clanton gave mixed testimony during the trial. She recanted her allegation that Copeland had hit her but continued to assert he had threatened her with a handgun. Attacking Clanton's credibility implicated valid strategic decisions for Brown and possibly external considerations rooted in the contractual relationship he had with her.

This court recently outlined the interplay of constitutionally adequate legal representation of criminal defendants and their lawyers' conflicts of interest. *Everette v. State*, No. 126,047, 2024 WL 2873489, at *3-4 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. ___ (September 27, 2024). In *Everette*, the panel drew on *Sola-Morales v. State*, No. 118,451, 2019 WL 6041443, at *6 (Kan. App. 2019) (unpublished opinion). We do likewise:

6

"A criminal defendant may obtain relief in a habeas corpus action if his or her lawyer in the underlying case labored under an 'active' conflict of interest and the defendant either unsuccessfully objected to the representation at the time or can show the conflict compromised the representation. *State v. McDaniel*, 306 Kan. 595, 609, 395 P.3d 429 (2017). Criminal defendants are constitutionally entitled to be represented by lawyers who have no conflicts of interest that would divert them from fully advocating on their clients' behalf. *Sola-Morales*, 300 Kan. at 883; *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). Such a conflict impinges on the Sixth Amendment right to counsel. *Mickens v. Taylor*, 535 U.S. 162, 166-67, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

"Relying on *Mickens*, the Kansas Supreme Court has recognized three categories of active conflicts of interest in criminal cases: (1) the district court permits a lawyer to represent multiple clients with antagonistic interests in the same proceeding despite an objection to the representation; (2) a lawyer represents multiple clients but no objection has been lodged; and (3) the representation of a current client conflicts either with a duty owed a former client or with the lawyer's own personal or financial interests. *Sola-Morales*, 300 Kan. at 884. If the circumstances fall in the first category, the defendant is entitled to relief without showing actual prejudice. In the second instance, the defendant has to show that the conflict adversely affected his or her legal representation—a lower standard than the *Strickland* test for prejudice triggering a remedy. See *Fuller v. State*, 303 Kan. 478, 487, 363 P.3d 373 (2015)." 2019 WL 6041443, at *6.

Here, Brown did not represent multiple defendants in the same criminal action. Any conflict would be of the third type identified in *Mickens*. Again, we turn to *Sola-Morales*:

"The Kansas Supreme Court has referred to that sort of conflict of interest as the '*Mickens* reservation' because the United States Supreme Court has not expressly identified whether the defendant must show merely an adverse effect on his or her representation, as required under *Cuyler*, or must show sufficiently deficient representation to undermine confidence in the outcome of the criminal case, as required under *Strickland*. *Fuller*, 303 Kan. at 487; *Sola-Morales*, 300 Kan. at 884. The Kansas Supreme Court has yet to

7

resolve the *Mickens* reservation by endorsing one or the other standard. See *State v. Moyer*, 309 Kan. 268, 279-80, 434 P.3d 829 (2019) (recognizing lack of governing standard); *State v. Lindsay*, No. 117,826, 2019 WL 2399477, at *7 (Kan. App. 2019) (unpublished opinion) (noting Kansas Supreme Court has treated standard as unresolved issue).

"The Kansas Supreme Court most recently discussed the *Mickens* reservation in *Moyer* and identified three tests different courts have used to determine an 'adverse effect' on representation requiring relief, assuming the *Cuyler* standard rather than the *Strickland* standard were to apply. 309 Kan. at 283-84. The most common test recognizes an adverse effect when the conflicted lawyer failed to undertake 'some "plausible alternative defense strategy or tactic that might have been pursued"' and made that choice because of the conflict. *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994); see *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996); *Moyer*, 309 Kan. at 283. The second formulation adds a requirement that the alternative strategy or tactic be 'objectively reasonable.' *Moyer*, 309 Kan. at 283; see *United States v. Nicholson*, 611 F.3d 191, 197 (4th Cir. 2010). The third test, apparently unique to the Seventh Circuit, simply requires a showing of a reasonable likelihood the lawyer's representation would have been different had there been no conflict. *Moyer*, 309 Kan. at 283-84; see *Hall v. United States*, 371 F.3d 969, 974 (7th Cir. 2004).

"The *Moyer* court acknowledged the three tests and, in particular, the discussion of them in *West v. People*, 341 P.3d 520 (Colo. 2015). But the court then recognized that Moyer would lose under each of three formulations of adverse effect and didn't identify one of them as the legally appropriate standard. *Moyer*, 309 Kan. at 284-85. So in *Mickens* reservation cases—where the defense lawyer had a conflict based on the past representation of another client or on some personal or financial interest—the Kansas Supreme Court appears to have left open whether the *Strickland* ineffectiveness standard or the *Cuyler* adverse effect standard applies and if *Cuyler* applies, the test for assessing adverse effect. We see *Moyer*'s ecumenical approach to the test for adverse effect as superseding *State v. Cheatham*, 296 Kan. 417, 452, 292 P.3d 318 (2013), in which the court identified and considered only the Seventh Circuit test." 2019 WL 6041443, at *7.

8

The standard governing a conflict under the *Mickens* reservation remained unresolved in June 2024. See *Everette*, 2024 WL 2873489, at *4. Nothing appears to have changed since then. We follow the lead of the majority in *Sola-Morales* and apply the *Cuyler*-based test requiring a showing that the lawyer would have pursued an objectively reasonable alternative strategy or tactic but for the conflict. See *Sola-Morales*, 2019 WL 6041443, at *9-11. We opt for the *Cuyler* standard over *Strickland* simply because it is more favorable to Copeland. The overlay of objective reasonableness avoids results that either would tilt unfairly against Copeland or would lean too far the other way to afford him a gratuitous remedy. See *Sola-Morales*, 2019 WL 6041443, at *9.[1]

[1] In *Sola-Morales*, one panel member concurred in denying relief to Sola-Morales on his 60-1507 motion and found the *Strickland* test for prejudice should apply to a conflict falling within the *Mickens* reservation. 2019 WL 6041443, at *24-25 (Leben, J., concurring). In *Everette*, Everette never identified an alternative strategy he believed his lawyer disregarded because of the purported conflict. So the panel rejected the point without having to address which formulation of the *Cuyler* test ought to apply. 2024 WL 2873489, at *4.

Copeland contends Brown should have more rigorously cross-examined Clanton based on the results of a drug test law enforcement officers had her take as they investigated the charges against him. In arguing this point, Copeland relies on an affidavit Clanton provided in 2019 in which she says she agreed to the drug test and told the officers she was taking Xanax, so she would be positive for Benzodiazepines. When asked about marijuana, Clanton stated she told the officers she hadn't smoked in months.

Assuming Clanton would have confirmed the content of her affidavit in a hearing on the 60-1507 motion, we fail to see how that evidence would have aided Copeland in the jury trial. First, of course, he hasn't shown that Brown was even aware of the drug test or the results. Likewise, nothing in the record establishes the test results. There would have been no evidentiary advantage in questioning Clanton about taking prescription Xanax absent some showing the drug would have impaired her ability to perceive or

9

recall events. And, again, there is no such expert evidence in the record to that effect. Copeland has identified no other specific lines of cross-examination Brown should have undertaken of Clanton at trial. In short, the record fails to demonstrate Brown ignored a reasonable alternative trial strategy for cross-examining Clanton.

As a separate point in this appeal, Copeland faults Brown for not obtaining the results of Clanton's drug test. First, of course, it's not obvious that Brown knew about the drug test. And, as we have said, Copeland has not shown that the results would have been useful to the defense at trial. The point falters on the prejudice portion of the *Strickland* test.

• Copeland claims to have posttraumatic stress disorder and other mental health issues and contends Brown should have requested a competency hearing for him ahead of the jury trial. But Copeland has offered no evidence, such as an affidavit from a psychiatrist or a psychologist, to support his assertion that he might have been legally incompetent before or during the trial. Neither the lawyers nor the district court raised any concerns during the trial that Copeland might not have understood the proceedings. Moreover, the record shows Copeland was engaged and coherent during the sentencing hearing held not long after the trial. That's strong circumstantial evidence Copeland would have been competent during the trial. So there simply is no evidence to suggest any disordered thinking on Copeland's part as the jury trial unfolded. In turn, Copeland has failed to show any basis for challenging the outcome of the trial because of his mental capacity at the time.

• Copeland contends Brown should have retained an expert on police interrogation techniques to challenge how law enforcement officers questioned Clanton. We suppose the point would be to show that the officers somehow tricked or coerced Clanton into making a false statement incriminating Copeland. But Copeland has not presented evidence in support of his 60-1507 motion from an expert on interrogation methods to

support his premise or our supposition. An assertion that some as yet unidentified expert might have been available to testify at trial is insufficient to show actual prejudice in a collateral challenge to criminal convictions. *Ross v. State*, No. 123,907, 2022 WL 17544331, at *4 (Kan. App. 2022) (unpublished opinion); *Bailey v. State*, No. 124,101, 2022 WL 2188031, at *2 (Kan. App. 2022) (unpublished opinion) (An "entirely abstract and hypothetical assertion that some unidentified expert in a particular field might have been of help . . . is insufficient to suggest legal prejudice.").

• Copeland has made a discursive argument that his statutory speedy trial rights were violated and Brown and the lawyer representing him in his direct criminal appeal fumbled the issue. But Copeland has failed to establish any grounds for habeas corpus relief.

As an initial argument on this point, Copeland contends there was a district court hearing on a motion to dismiss for a violation of the speedy trial statute, K.S.A. 22-3402. In the direct appeal, there was no transcript of a hearing on the motion, so we remanded to the district court with directions that the lawyers attempt to reconstruct the hearing. See *Copeland*, 2018 WL 3602970, at *9. Nothing apparently came of that effort. There is neither a reconstruction nor a transcript of a hearing on the speedy trial motion in the record. The issue was not briefed or addressed in the direct appeal. Rather, Copeland's appellate lawyer argued that the district court granted a continuance of the trial without Copeland being present and his absence amounted to structural error, requiring the convictions be reversed without a showing of any prejudice. We rejected the notion of a structural error and found any error to have been harmless. 2018 WL 3602970, at *10.

Here, Copeland has not made a colorable showing that his statutory speedy trial right was violated. He undermines his claim at this point because he has failed to demonstrate any prejudice. We know the district court did not find a violation and grant the motion—the remedy would have been dismissal of the charges with prejudice. See

11

*State v. Queen*, 313 Kan. 12, 30, 482 P.3d 1117 (2021). But we don't know if the district court denied the motion or simply never ruled on it, a possibility that would account for the lack of a transcript or reconstruction for a hearing that never happened. Either way, however, Copeland would not have been prejudiced because he has not established the motion had any merit.

Copeland alternatively argues that if there were a hearing on the motion to dismiss—something that the record fails to show—he wasn't present for it. Assuming there were a hearing and he was absent, that would be a constitutional error. The hearing would have been a critical stage in the prosecution requiring Copeland's presence. See *State v. McDaniel*, 306 Kan. 595, 600-01, 395 P.3d 429 (2017). But as we have indicated, a defendant's absence may amount to harmless error if the State can show beyond a reasonable doubt the outcome would have been the same if the defendant had been present. *State v. Herbel*, 296 Kan. 1101, 1110-11, 299 P.3d 292 (2013). Copeland's claim is vaporous. In this collateral attack, Copeland has to point to an evidentiary basis for concluding there actually was a hearing and that he wasn't there. He has done neither. And that alone undoes his argument. Moreover, we would have to conclude that Brown's failure to secure his presence for the hypothesized hearing violated the Sixth Amendment standard for adequate representation. And we would then have to find that Copeland had been legally prejudiced because of the lapse. Not to belabor matters, Copeland has failed to establish any prejudice since he has not shown how his speedy trial right was compromised.

Finally, on this issue, Copeland contends he was inadequately represented at trial and on direct appeal precisely because he had a meritorious speedy trial violation. But his conclusory assertion without any reference to record evidence of a violation falls short. The failure to cite to any evidence demonstrating a violation amounts to an abandonment of the point for inadequate briefing, especially given that Copeland had been on bond for part of the time before trial and both sides had been granted trial continuances, making

12

computation of the speedy trial time less than obvious. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (point raised but not argued deemed abandoned or waived). While Copeland has come at the speedy trial claim from various angles, none of those efforts outlines inadequate representation and prejudice necessary to warrant relief under the *Strickland* standard.

• Copeland challenges the way the district court allocated his jail time credit for the period he was a pretrial detainee. As we have explained, the jury heard and decided two separately charged cases in the one trial—the physical assault of Clanton and the drug and weapons offenses. The district court sentenced Copeland to 13 months in prison for the aggravated assault and awarded him 641 days of jail time credit. In the drugs and weapons case, the district court sentenced Copeland to a controlling prison term of 162 months with no jail time credit. The district court ordered that the sentences in the case be served concurrently. As ordered by the district court, the jail time credit did not reduce Copeland's overall term of incarceration.

In this appeal, Copeland's lawyer makes a two-paragraph argument that Brown was derelict because he approved journal entries that afforded Copeland no "meaningful" jail time credit. Copeland's supplemental brief characterizes the way the district court awarded the credit as an illegal sentence that should be summarily corrected. Neither advances a viable ground for relief.

The Kansas Supreme Court recently revised how K.S.A. 21-6615(a), the jail time credit statute, should be applied in a way that benefits defendants. *State v. Hopkins*, 317 Kan. 652, Syl., 537 P.3d 845 (2023). Until *Hopkins*, the commonly accepted reading of K.S.A. 21-6615(a) precluded an award of jail time credit in a case unless the defendant had been held "'solely'" in that case. In other words, a defendant detained before trial in two or more cases could not receive credit against any sentence for the time they were detained awaiting disposition of the cases. 317 Kan. at 655. The *Hopkins* court cited *State*

*v. Campbell*, 223 Kan. 528, Syl. ¶ 2, 575 P.2d 524 (1978), as the principal progenitor of the held-solely interpretation—an interpretation without an anchor in the language of K.S.A. 21-6615(a). The court then held that "a defendant shall be awarded jail time credit for *all* time spent in custody pending the disposition of his or her case." *Hopkins*, 317 Kan. at 657.

Neither Copeland nor his appellate lawyer has addressed *Hopkins*, so they have not argued it should be applied retroactively in collateral proceedings attacking convictions when the direct appeals have been long concluded. We have no indication that the court would apply *Hopkins* that way. Generally, changes in the law that occur after a direct criminal case is final will not be given retroactive application in a 60-1507 proceeding. See *Kirtdoll v. State*, 306 Kan. 335, 340-41, 393 P.3d 1053 (2017).

Moreover, the district court's treatment of jail time credit in sentencing Copeland functionally conformed to the *Campbell* rule. Brown's representation would not have fallen below the constitutional standard because he failed to advocate for a change in what was then a settled point. See *Stewart v. State*, 310 Kan. 39, 53, 444 P.3d 955 (2019); *Baker v. State*, 20 Kan. App. 2d 807, Syl. ¶ 3, 894 P.2d 221 (1995). Likewise, Copeland's pro se supplemental argument for an illegal sentence really should be considered under K.S.A. 22-3504, governing correction of sentences. But a sentence is not illegal "because of a change in the law that occurs after the sentence is pronounced." K.S.A. 22-3504(c)(1). That statutory limitation undercuts Copeland's argument.

• In his supplemental brief, Copeland contends the district court improperly revoked his bond in the felony cases and he was not permitted to post a bond on the misdemeanor charges. As we have already determined, any 60-1507 claims pertaining to the misdemeanors are untimely. More generally, Copeland's complaints about his pretrial detention have no direct bearing on the constitutional propriety of his convictions and the resulting sentences and, therefore, fall outside the scope of this 60-1507 proceeding. See

14

K.S.A. 60-1507(a). Even if Copeland's pretrial detention were wrongful, reversing his convictions would be an inappropriate and wholly gratuitous remedy. Copeland may have been able to contest the bond determinations and his resulting pretrial confinement at the time under K.S.A. 60-1501. See *Smith v. State*, 264 Kan. 348, 355-56, 955 P.2d 1293 (1998).

*Claimed Jury Trial Errors*

For purposes of this appeal, we treat the purported errors Copeland has alleged about his representation during the jury trial as going to the constitutional adequacy of his legal representation and, therefore, properly presented in a 60-1507 motion. In other words, we do not consider them as simply trial errors that could have been raised in the appeal in the direct criminal case.

• Copeland contends Brown was ineffective for failing to impeach Sedan Police Chief Cash Kimple about whether Copeland and Clanton had a common-law marriage. If they were married, the marital privilege could have been asserted to limit Clanton's testimony. See K.S.A. 60-428 (marital privilege). The record, however, does not establish what Kimple could have said about the relationship. In his testimony, he characterized the couple as boyfriend and girlfriend.

As an evidentiary matter for purposes of the privilege, the district court probably should have been asked to rule on the nature of the relationship in a pretrial hearing or at least outside the jury's presence during the trial. See K.S.A. 60-408 (district court to make determinations bearing on conditions governing admission of proposed evidence). At trial, Clanton testified that she considered herself common-law married to Copeland and gave a specific date for the marriage. But her testimony likely amounted to an impermissible legal conclusion and was insufficient to establish a common-law marriage, even for purposes of triggering the marital privilege. A common-law marriage requires a

15

constellation of elements: (1) Each party must have the present capacity to be married; (2) the parties must have a marriage agreement; and (3) they must hold themselves out to the public as spouses. *In re Common-Law Marriage of Heidkamp and Ritter*, 317 Kan. 125, 128, 526 P.3d 669 (2023); *Fleming v. Fleming*, 221 Kan. 290, 291, 559 P.2d 329 (1977). It is not enough for two people to simply declare themselves married on a particular date.

Even assuming Copeland and Clanton were common-law married and Brown had asserted a marital privilege on Copeland's behalf, the trial evidence would not have been materially altered. First, the privilege shields confidential communications between the spouses. K.S.A. 60-428(a). It does not cover testimony from one spouse about the conduct of the other spouse. *State v. Newman*, 235 Kan. 29, 40-41, 680 P.2d 257 (1984). And a specific statutory exception overrides the privilege as to communication when one spouse is charged with committing a crime against the other. K.S.A. 60-428(b)(3).

The marital privilege would not have limited Clanton's testimony about Copeland threatening her with a firearm. At trial, the State introduced recordings of telephone conversations between Copeland and Clanton while he was confined in jail. The record does not show whether they had any reason to believe the telephone calls were confidential or were being recorded. At this juncture, Copeland probably has some obligation to establish he had reason to believe they would have been confidential. Otherwise, the privilege would not apply, just as it would not to any conversations the two may have had in the presence of a third party.

Most of the recorded conversations related to the domestic battery and aggravated assault charges. Those would not have been privileged based on the exception in K.S.A. 60-428(b)(3). One conversation related to the drug charges and specifically the possession of methamphetamine. Again, even assuming the marital privilege would have applied to that communication, its introduction at trial was harmless. The State's evidence

16

also included Copeland's admission during his initial booking into the jail that the methamphetamine found in his home belonged to him, thereby deflecting attention from his adult son who also lived there.

On this point, Copeland has failed to show that Brown fell below a constitutionally acceptable standard in his trial representation since he has not shown he was in a common-law marriage. And Copeland has failed to show material prejudice calling into question the jury verdicts, even if Brown had been less than dutiful in pressing the issue.

• Copeland contends Brown failed to sufficiently impeach Clanton at trial based on contradictions in her testimony. But Copeland has not identified particular lines of inquiry Brown should have pursued. This sort of conclusory my-lawyer-could-have-done-more claim is legally insufficient.

• Copeland now asserts that Brown impermissibly kept him from testifying in his own defense during the jury trial. After the prosecution presented its case and the district court denied a defense motion for a judgment of acquittal, Brown announced that Copeland would not testify. The district court did not inquire of Copeland personally about the decision. The district court had no obligation to do so, and the Kansas Supreme Court has discouraged that sort of inquiry. *Taylor v. State*, 252 Kan. 98, 104-06, 843 P.2d 682 (1992) (recognizing and affirming rule of *State v. McKinney*, 221 Kan. 691, 694-95, 561 P.2d 432 [1977], that inquiry is "unnecessary and inappropriate"); see *State v. Anderson*, 294 Kan. 450, 465-67, 276 P.3d 200 (2012) (endorsing *Taylor* and *McKinney*). Copeland did not object to Brown's statement or personally assert that he wished to testify.

Criminal defendants have a personal right to testify at trial. Although a defendant's lawyer can and should offer advice on the ramifications of testifying, the decision belongs to the client. In short, it is not a matter of strategy entrusted to the lawyer. See

17

*State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000); *State v. Hargrove*, 48 Kan. App. 2d 522, 534, 293 P.3d 787 (2013). In his 60-1507 papers, Copeland has not proffered what he purportedly would have told the jury if he had testified. In the absence of that representation, we may not simply surmise that the result of the trial might have been different. Copeland has failed to satisfy the prejudice portion of the *Strickland* test for habeas corpus relief.[2]

[2] After the parties submitted their briefs, the Kansas Supreme Court held that a district court had created a structural error in removing a criminal defendant from the witness stand and directing that the jury disregard his testimony because he verbally fenced with the prosecutor and the district court about the questions posed to him on cross-examination. *State v. Cantu*, 318 Kan. 759, 773, 547 P.3d 477 (2024). The court reversed without a showing of actual prejudice under those particular circumstances—the defendant's conduct was not so disruptive or otherwise contumacious as to undermine the trial process, and the district court precipitously took the extraordinarily drastic step of striking the defendant's testimony, effectively depriving him of a fundamental right rooted in the Sixth Amendment. 318 Kan. at 776. But the court recognized that structural error would not necessarily arise in other circumstances, and those situations would call for harmless-error analysis. We view *Cantu* as wholly inapposite. The error there rested on the district court's direct actions that deprived the defendant of his right to testify, literally in the midst of that testimony. Here, in clear contrast, the district court did nothing to inhibit Copeland from testifying during the trial.

• Copeland contends Brown should have objected when the prosecution placed various pieces of evidence on a table in the courtroom during trial ostensibly depicting how law enforcement officers found the items in a search of his residence. The briefing fails to demonstrate how not objecting to the physical arrangement of what apparently was otherwise admissible evidence fell below the *Strickland* standard for constitutionally adequate representation or the companion standard for demonstrating prejudice calling the trial result into question. The argument fails.

• Copeland contends Brown was constitutionally ineffective for failing to object to the destruction of what he refers to as a "'gassing generator'" law enforcement officers confiscated from his residence. The State charged Copeland with one count of felony

18

possession of drug paraphernalia for having the generator, coffee filters, and camp fuel. As we have said, the jury convicted Copeland of this charge. Law enforcement officers disposed of the generator as a hazardous item under K.S.A. 2011 Supp. 22-2512(2)(a). That happened before Brown entered his appearance as counsel for Copeland, so he could not have opposed the destruction of the generator.

We more broadly construe the contention as a complaint that Brown did not contest trial evidence about the generator because it had been destroyed and, therefore, could not be introduced as an exhibit for the jury's consideration. But even cast that way, Copeland's argument is without merit.

At trial, a law enforcement officer testified that based on his training and experience he recognized the generator as a device used to manufacture hydrochloric gas—a highly volatile substance—used in the production of methamphetamine. The officer photographed the generator, and some of the photographs were admitted as evidence during the trial.

Extending every consideration to Copeland, we assume for the sake of argument the generator was wrongfully destroyed because it was essentially inert if purged of any hydrochloric gas and, therefore, did not meet the statutory definition of a "'hazardous material.'" K.S.A. 2011 Supp. 22-2512(2)(c). But our assumption doesn't help Copeland. He has not presented anything, such as an affidavit from an expert witness, suggesting the object depicted in the photographs was not a gassing generator or that the object could not be used to make hydrochloric gas as a step in the production of methamphetamine. In short, Copeland has again failed to demonstrate any material prejudice flowing from Brown's purported error.

• Copeland contends Brown was constitutionally ineffective because he did not object to the prosecutor's characterization of an Uzi rifle and related gun parts seized

19

from his house as a submachine gun. The one citation to the trial record in Copeland's appellate brief does not support the contention. The prosecutor did not refer to the rifle as a machine gun. The testifying law enforcement officer explained to the jury how the rifle was in the process of being modified from a semiautomatic firearm to a fully automatic firearm—one that would continuously discharge bullets with a single extended pull of the trigger. The officer testified he had "a hard time deciding" whether to refer to the weapon as "an Uzi semiautomatic rifle" or "an Uzi submachine gun" because it was being converted to a fully automatic firearm. The argument is without factual support in the record. Moreover, the described modification of the Uzi rifle would have turned it into the functional equivalent of a machine gun. So any objection to the officer's reference to a machine gun would have been wordplay.

• In this collateral attack on his convictions, Copeland recasts a challenge to one of the jury instructions he raised in his direct appeal of the criminal cases. Here, Copeland constitutionalizes the issue by contending Brown's representation fell below the Sixth Amendment standard for adequacy because he failed to object to the instruction. But, as we explain, presented in that way, the argument is self-defeating.

The district court instructed the jury on the culpable mental state for the charges of manufacturing an illegal drug and possessing precursors and paraphernalia for doing so this way: "The State must prove that the defendant committed one element of the crime of manufacture of methamphetamine, possession of ephedrine, possession of lithium, possession of coffee filters, Coleman camp fuel and a gas generator, possessed methamphetamine, possessed hydrocodone, possessed marijuana, and possessed paraphernalia." The instruction then set out one of the definitions of "'intentionally" in K.S.A. 21-5202(h), governing culpable mental states for crimes. The instruction was drawn from the version of PIK Crim. 4th 52.010 in use in 2014. But, as the panel explained in the direct appeal, the instruction improperly included a parenthetical direction on the use of the instruction and omitted the word "intentionally" between

20

"defendant" and "committed." *Copeland*, 2018 WL 3602970, at *11. Nobody caught the editing error during the trial; neither the prosecutor nor Brown objected to the fractured instruction.

In the direct appeal, Copeland's lawyers argued the mistake created a structural error requiring the reversal of the drug convictions without a showing of actual prejudice. The panel found the error was not structural; it also considered and rejected any reversal based on clear error—the standard that otherwise would have applied in the absence of a trial objection to the instruction. The panel reasoned both that the jury instructions, considered collectively, correctly stated the burden of proof, the elements of the charged crimes, and the definition of intentionally as a culpable mental state and that those legal principles were appropriately incorporated into the lawyers' closing arguments to the jury. 2018 WL 3602970, at *12-13; see *State v. Huggins*, 319 Kan. 358, 363, 554 P.3d 661 (2024) (clear error standard).

In this 60-1507 proceeding, Copeland cannot raise the same argument and hope for a different result from this panel. See *Wilson v. State*, No. 120,218, 2020 WL 1070032, at *2 (Kan. App. 2020) (unpublished opinion); Supreme Court Rule 183(c)(3) (2024 Kan. S. Ct. R. at 240). So he has shifted the focus to Brown's failure to object to the instruction as a purported constitutional violation. But the effort gains Copeland no substantive advantage.

Had Brown objected to what amounted to a clerical error in the instruction, the district court undoubtedly would have corrected the language. And the properly rendered instruction would have been both factually and legally appropriate. There would have been no instructional error to assert in the direct appeal and, in turn, nothing to complain about now. Absent Brown's objection, the instruction, though mangled, was not clearly erroneous under the circumstances—an assessment we share with the panel considering

the direct appeal. Copeland, therefore, has shown no legal prejudice and, in turn, no basis for relief.

We conclude where we began. Between them, Copeland and his appellate lawyer have raised a multitude of points. We have reviewed them and find no basis to conclude the district court erred in denying Copeland's 60-1507 motion.

Affirmed.